690 F.2d 1230
 8 Media L. Rep. 2257
 UNITED STATES of America, Plaintiff-Appellee,
v.
Allen M. DORFMAN, et al., Defendants-Appellants.
Chicago Tribune Company, et al., Intervenors-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
Allen M. DORFMAN, et al., Defendants-Appellants.
Appeal of William E. WEBBE, et al.
 Nos. 82-2489, 82-2520.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Sept. 28, 1982.
Decided October 1, 1982.
Rehearing and Rehearing En Banc Denied Nov. 9, 1982.
 
 Michael J. Rovell, Jenner & Block, Harvey M. Silets, Silets & Martin, Ltd., Theodore Sinars, Harris, Burman, Sinars & Jiganti, Edward L. Foote, Winston & Strawn, Chicago, Ill., for defendants-appellants.
 Gary Shapiro, Sp. Atty., U. S. Dept. of Justice, Chicago, Ill., for plaintiff-appellee.
 A. Daniel Feldman, Isham, Lincoln & Beale, Lawrence Gunnels, Reuben & Proctor, Chicago, Ill., for intervenors-appellees.
 Before CUMMINGS, Chief Judge, and POSNER and COFFEY, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 The appellants in No. 82-2489 are five persons charged with various federal crimes arising out of an alleged scheme to defraud a union's pension fund. Their trial is to begin in a few days. As part of the investigation that led to their indictment the government engaged in wide-ranging wiretapping for more than a year. Hundreds of persons' telephone conversations were intercepted, yielding more than 2000 reels of taped conversations. The defendants moved under 18 U.S.C. § 2518(10)(a), a part of Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510-2520, to suppress at trial the fruits of the wiretapping of their conversations, on the ground that the wiretapping was unlawful under Title III. At the evidentiary hearing on the motion, the government submitted some 200 exhibits containing wiretap materials. The district judge ordered the exhibits to be sealed. At the conclusion of the hearing he ruled that most of the wiretap evidence that the government contended was relevant to the criminal prosecution had been obtained lawfully.
 
 
 2
 This ruling precipitated a motion by newspaper publishers and broadcasters to unseal the sealed exhibits, so that they could be inspected and copied. The news media are interested in the exhibits because the defendants include senior officers of labor unions and alleged captains of "organized crime," the crimes charged include bribery of a United States Senator, and as a result of the nature of the alleged crimes and the identity of the defendants the criminal prosecution has already been publicized widely.
 
 
 3
 The district judge (in two orders that we shall treat as one for the sake of simplicity) directed that most of the sealed exhibits be unsealed; some of these, however, are not to be unsealed until the jury has been empaneled. The defendants-appellants argue that the release of any of the sealed exhibits, unless and until they are put into evidence at the trial (most of them will not be), would violate both Title III and the constitutional guarantee of a fair trial.
 
 
 4
 We must decide first whether we have jurisdiction of this appeal from what is technically an interlocutory order. We have some difficulty with the argument that the order is in effect the denial of an injunction to protect the defendants' right of privacy under Title III. Orders denying injunctions are, of course, appealable regardless of finality, 28 U.S.C. § 1292(a)(1), but Title III does not provide for injunctive relief (a deliberate omission, see S.Rep.No.1097, 90th Cong., 2d Sess. 107 (1968) U.S.Code Cong. & Admin.News, p. 2112); and while it does of course provide for motions to suppress, in other contexts such motions have not been considered "injunctions" for purposes of section 1292(a)(1), as we noted just the other day in holding that these appellants could not appeal the district judge's order denying their motion to suppress the wiretap evidence as unlawfully obtained. United States v. Dorfman, 690 F.2d 1217, 1223 (7th Cir. 1982).
 
 
 5
 The appellants also rely however on the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949), which permits the immediate appeal of an order that is at once so far separate from the main case that the appeal will not interrupt and delay the progress of the trial, and likely to become moot if judicial review is postponed until the final judgment in the main case is appealed. To refuse to allow immediate appeal in such a case would have no basis in the final-judgment rule (28 U.S.C. § 1291), which seeks to expedite the trial while preserving a meaningful right of judicial review of the legal rulings made at the trial.
 
 
 6
 The motion to unseal the exhibits, and this appeal insofar as it is based on Title III from the grant of that motion, compose a proceeding that is distinct from-in the practical sense of not interfering with-the criminal trial scheduled to begin shortly. There is of course a relationship between the trial and the motion; that is why we have expedited the consideration of this appeal. But the moving parties-representatives of the news media-are not parties to the criminal proceeding, and we have not been asked to stay the trial while we consider this appeal. The trial will go forward, on schedule, however the appeal is decided. This distinguishes the present case from United States v. Dorfman, supra, which held that an order denying a Title III motion to suppress wiretap evidence as unlawfully obtained is not appealable as a collateral order. Because such a motion is directed to the use of specific evidence at trial, a direct appeal from the order disposing of it could delay the trial; this appeal cannot. Cf. id., at 1224.
 
 
 7
 Whichever way the district judge ruled on this motion his ruling would probably be moot as a practical matter by the time the trial was finished. If the district judge denied the motion, and the motion could not have been appealed, the exhibits that the movants wanted to use in their news stories might well lose all newsworthiness by the time the trial was over. If the district judge granted the motion, as he did, and his action could not be appealed, the privacy that the defendants claim to be entitled to under Title III would be gone forever as soon as the media began disseminating their news stories; and it is doubtful, to put it mildly, that if the appellants ultimately convinced this court or the Supreme Court that the motion had been improperly granted, they could get any monetary redress. They could not against the district judge, of course; nor, in all probability, against the news media, since "good faith reliance on a court order ... shall constitute a complete defense to any civil ... action" under Title III, 18 U.S.C. § 2520, and by hypothesis the media would be acting in reliance, presumably good-faith reliance, on a court order.
 
 
 8
 The question of appealability might be answered differently if this appeal were based solely on the appellants' argument that public disclosure of the wiretap evidence will prevent their getting a fair trial. Not only could such an appeal delay the trial, but the appellants, though not the media, could look forward to having an effective remedy if it turned out that the motion had been granted improperly-an order for a new trial. But Title III protects a different interest, privacy, which can be lost without a criminal conviction.
 
 
 9
 So we have jurisdiction, and can turn to the merits. Title III makes it a crime to disclose wiretap evidence (transcripts, logs, summaries, etc.) only if the evidence was obtained in violation of Title III and the disclosure is willful. 18 U.S.C. § 2511(1)(c). But by permitting disclosure of lawfully obtained wiretap evidence only under the specific circumstances listed in 18 U.S.C. § 2517, Title III implies that what is not permitted is forbidden (see also S.Rep.No.1097, supra, at 91), though not necessarily under pain of criminal punishment. The implication is reinforced by the emphasis the draftsmen put on the importance of protecting privacy to the extent compatible with the law enforcement objectives of Title III. See Congressional Findings following 18 U.S.C. § 2510; S.Rep.No.1097, supra, at 66-67; Gelbard v. United States, 408 U.S. 41, 47-51, 92 S.Ct. 2357, 2360-2362, 33 L.Ed.2d 179 (1972).
 
 
 10
 Now the only pertinent exception in section 2517 to this implied prohibition is in subsection (3), which (as amended in 1970) provides: "Any person who has received, by any means authorized by this chapter (Title III), any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of (Title III) may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." The function of this provision is obvious. Since one of the main purposes of Title III is to allow the fruits of at least some wiretaps to be used in criminal investigations and prosecutions (another, as mentioned, is to protect privacy), section 2517(3) is necessary so that the fruits of lawful wiretapping can be used as evidence in criminal proceedings. The draftsmen must have known that most criminal proceedings are conducted in public, so probably they expected (if they thought about the matter) that most testimony authorized by section 2517(3) would end up in the public domain. But we find no evidence that they wanted to create a right of public access. The privilege to disclose created by section 2517(3) continues in force "while giving testimony." There is no separate privilege to publicize testimony that was given in camera. And the right of the news media to get access to testimony is derivative from the public's right, if any. Nixon v. Warner Communications, Inc., 435 U.S. 589, 609, 98 S.Ct. 1306, 1317, 55 L.Ed.2d 570 (1978).
 
 
 11
 The district judge in this case sealed the exhibits submitted by the government in the suppression hearing in order to protect the defendants' right of privacy under Title III and their constitutional right to a fair trial. We need not decide whether he was required to seal the exhibits, either by Title III or by the due process clause of the Fifth Amendment (which guarantees criminal defendants the right to a fair trial and implicitly therefore at least some protection against prejudicial pretrial publicity), though we note that the strict prohibition in Title III against disclosure of unlawfully obtained wiretap evidence would be undermined by public disclosure of wiretap evidence at a suppression hearing before the judge ruled on the lawfulness of the wiretaps. See United States v. Cianfrani, 573 F.2d 835, 857 (3d Cir. 1978). The defendants in this case have argued that the judge did not go far enough to protect their rights in the suppression hearing-that he should have conducted the entire hearing in camera. No one is arguing that he should not have done what he did-seal the exhibits. Having done so, he was not authorized by any provision that we are able to find in Title III to release them to the public. The only lawful way they can be made public over the defendants' objection is by being admitted into evidence in the criminal trial or in some other public proceeding within the scope of section 2517(3). The usual disposition of evidence submitted to a court in a preliminary hearing but no longer required by the court is to return it to the party who submitted it-in this case the government. The government could not, after getting back the sealed wiretap evidence, hold a press conference and there release the evidence to the public, without violating Title III; no more are judges authorized to release it.
 
 
 12
 Now it might seem that if the district judge has the implicit authority under Title III to seal exhibits offered at the suppression hearing, he must have implicit authority to unseal them. But the issue is not his authority to correct a mistake. That is not what he did here. He unsealed the exhibits because he concluded that the harm of unsealing to the defendants' privacy would be outweighed by the newsworthiness of the exhibits. We cannot find in Title III any grant of authority to judges to make that particular judgment.
 
 
 13
 But perhaps we should be looking for it in another place-the First Amendment. Until recently there was doubt whether the First Amendment secured to the media, along with their right to publish information obtained by their own efforts, a right to make the government give them access to nonpublic information. See Gannett Co. v. DePasquale, 443 U.S. 368, 391-92, 99 S.Ct. 2898, 2911, 61 L.Ed.2d 608 (1979). But this doubt was dispelled just a few months age by the Supreme Court in Globe Newspaper Co. v. Superior Ct. for Cty. of Norfolk, --- U.S. ----, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). The "right of access" is now part of the First Amendment, and the Court held that it had been infringed by a state statute barring the public from any rape trial where the rapist's victim is a minor. But the Court stated that the right of access is not absolute, id. 102 S.Ct. at 2620, and the situation before it was different from this case. The curtailment of the right is less here. No one suggests that Title III prevents the public from attending a trial, as did the statute struck down in the Globe Newspaper case. Title III did not even exclude the public from the suppression hearing-a lesser affair, in terms of the public's legitimate interest in the operation of the criminal justice system, than the trial itself. Title III will not prevent the public from reading the transcripts of any of the wiretap evidence that is presented in the criminal trial. All it will prevent is public access to wiretap evidence that the district court lawfully sealed in order to protect the privacy of the defendants and that the government (which has taken no position on the merits of this appeal) has no further interest in.
 
 
 14
 The right to privacy of telephone conversation has long been thought to have a constitutional basis. That was the position taken in Justice Brandeis's famous dissent in Olmstead v. United States, 277 U.S. 438, 478-79, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928), and vindicated by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which overruled Olmstead, and to which the draftsmen of Title III tried to conform the statute. S.Rep.No.1097, supra, at 66. True, the right of conversational privacy, founded on the Fourth Amendment, is no more absolute than the "right of access," founded on the First Amendment. It yields among other things to imperative needs of law enforcement. The district court held in this case that most of the wiretap evidence that the government had obtained was obtained lawfully. Such evidence is admissible in the criminal trial against the appellants provided that it meets the other requirements for admissibility imposed by the Federal Rules of Evidence. To the extent that it is admissible and actually admitted, it will lawfully diminish the appellants' privacy. But this appeal concerns wiretap materials that may never be presented at the trial. No law enforcement interest requires that this evidence be made public. There is public curiosity about it, but curiosity is just the opposing force to privacy; one of them has to yield; both have constitutional dignity.
 
 
 15
 Congress in Title III struck a balance between these interests that seems reasonable to us. It put no limits on the public disclosure of lawfully obtained wiretap evidence through public testimony in legal proceedings; but neither did it authorize wiretap evidence not made public in this manner to be made public another way without the consent of the people whose phone conversations were intercepted. Of course the courts will not be allowed to distort the balance by indiscriminately sealing evidence or closing legal proceedings to the public. United States v. Cianfrani, supra, 573 F.2d at 854-57. But there is no suggestion that the district judge in this case should not have sealed the wiretap exhibits submitted in the suppression hearing.
 
 
 16
 By doing so as we have said he made them private documents unless and until admitted into evidence at a trial or other public proceeding described in section 2517(3). We do not think the First Amendment requires a different result. Wiretapping is not yet a constitutionally protected method of news gathering. And we are not persuaded that since the law enforcement officers who recorded the wiretaps, and the district judge, who read the transcripts, know the content of the wiretaps, the appellants' privacy interest has been hopelessly compromised and public exposure can do no further harm. This overlooks the difference between disclosure to a professionally interested stranger and to the world at large. The tort of invasion of privacy is committed only by publicizing-widely disseminating-private information. Prosser, Handbook of the Law of Torts 809-10 (4th ed. 1971). Similarly, Title III does not allow public disclosure of all lawfully obtained wiretap evidence just because a few officers are privy to its contents; if it were construed to do so, much of the statute would be superfluous, for example 18 U.S.C. §§ 2517(1)-(3).
 
 
 17
 Our analysis makes it unnecessary to decide whether the word "proceeding" in section 2517(3) was meant to include a suppression hearing (as we have tacitly assumed), whether release of the sealed exhibits would violate the appellants' rights under the Fifth Amendment, or even whether the Fifth Amendment issue can be brought up to us by means of an interlocutory appeal. But we do have to consider separately so much of the district court's order as unsealed the applications made under 18 U.S.C. § 2518(1) for the wiretap warrants. The release of such applications is governed by a different, and as one would expect more liberal, section of Title III-section 2518(8)(b), which authorizes disclosure for "good cause." But in considering what is good cause the district court must protect the appellants' privacy if endangered by disclosure, as it is here because there were a series of applications and some of the later ones refer to conversations wiretapped pursuant to warrants granted in response to the earlier applications. Without suggesting that this part of the court's order is wrong (we have not read the applications), we shall remand this part of the case so that the district court can decide in the first instance whether release of the applications in their entirety would be consistent with Title III as construed in this opinion.
 
 
 18
 We have another appeal before us (No. 82-2520)-by some of the people who were at the other end of wiretapped conversations with the defendants but who are not defendants themselves-from the same orders that the defendants have appealed from. These appellants complain that some of the exhibits that the defendants want to keep sealed pertain to conversations with them. Without considering these appellants' standing, we shall dismiss their appeal as moot, since by reversing the district court's orders unsealing all of the exhibits, including those in which these appellants are interested, we shall be giving them the same relief they would have gotten if their motion had been granted.
 
 
 19
 In No. 82-2489, the orders appealed from are vacated and the case is remanded for further proceedings consistent with this opinion. The appeal in No. 82-2520 is dismissed as moot, as is the motion of intervenor-appellee Field Enterprises, filed yesterday, to dissolve our stay of the district court's orders pending the decision of these appeals.
 
 
 20
 So Ordered.