UNITED STATES of America, Appellee,

v.

Victor Manuel GERENA, et al., Defendants,

Appeal of Elias CASTRO–RAMOS and Isaac Camacho–Negron, Defendants–Appellants.

No. 784, Docket 88–1551.

United States Court of Appeals, Second Circuit.

Feb. 17, 1989.

See also, D.C., 703 F.Supp. 211.

Diane Polan, New Haven, Conn. (Levine, Polan, Curry & Doody, of counsel), for defendant-appellant Elias Castro–Ramos.

Richard A. Reeve, New Haven, Conn., Asst. Federal Public Defender, for defendant-appellant Isaac Camacho–Negron.

Patty Merkamp Stemler, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C. (William J. Corcoran, Deputy Chief, Narcotic and Dangerous Drug Section, Dept. of Justice, Washington, D.C., Stanley A. Twardy, Jr., U.S. Atty., D. Conn., Albert S. Sabrowski, Executive Assistant U.S. Atty., John A. Danaher, III, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, LUMBARD and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Elias Castro–Ramos and Isaac Camacho–Negron appeal from an order of the United States District Court for the District of Connecticut, T. Emmet Clarie, J., filed November 3, 1988, allowing the government to use previously sealed, intercepted con-

versations in publicly filed briefs and memoranda as long as the conversations do not involve persons who are not parties to or witnesses in the proceedings below. For the reasons given below, we affirm, with a modification of the order.

## Background

This appeal grows out of the indictment and arrest of nineteen individuals in August 1985 for crimes in connection with an alleged armed robbery of $7.6 million of a Wells Fargo depot in West Hartford, Connecticut in September 1983.

Prior to the arrests, the FBI commenced electronic surveillance of the suspects and continued that surveillance at various locations, including Puerto Rico and Boston, until August 1985. In April 1986, after their arrest, defendants attempted to suppress over 1,100 of the tapes, claiming that they were not sealed in accordance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. ("Title III"). The district court granted the motions to suppress with respect to over 375 tapes and denied the motions with respect to the remaining tapes. The government appealed from that order. That appeal was heard by this panel along with this appeal and is presently under consideration. United States v. Rios, No. 88–1341 (2d Cir. argued January 19, 1989).

In September 1988, after the suppression order, the government attempted to describe the role of one of appellants' co-defendants, Luz Berrios Berrios, at a guilty plea hearing concerning that defendant's sentence by repeating some of the unsuppressed tape conversations, all of which were under seal. The defendant objected on the ground that the tapes had not been unsealed and could not be referred to in open court.

The next day, the government moved the district court for an order unsealing all unsuppressed surveillance evidence in connection with this case in order to facilitate the disclosure of evidence at trial. The court granted this motion, holding that all of the unsuppressed tapes "shall be accessible and useable in this case" by any of the government or defense attorneys "for all purposes enumerated in 18 U.S.C. Section 2517(2) and (3)." In addition, the district court held that "all electronic surveillance tape recordings and evidence derived therefrom which have not been suppressed may be included in any legal briefs or memoranda which may be submitted to this Court by any party."

Thereafter, defendants moved for reconsideration, arguing that the district court's ruling, in so far as it allowed electronic surveillance materials to be used in briefs and memoranda, violated defendants' right to privacy and right to a fair trial. In response to this motion, the district court narrowed its prior order as follows:

if any party files a legal brief or memorandum which includes quotations from tape recorded conversations involving persons who are not parties to or witnesses in the above-captioned lawsuit, any such quotations shall be filed as appendices under seal.

Dissatisfied with this amended order, appellants sought in this court a stay of the district court's order pending this appeal. The motion was granted on November 29, 1988. This expedited appeal followed.

## Discussion

### A. Jurisdiction

Even though the order under attack is not a final decision within the meaning of 28 U.S.C. § 1291, appellants claim that it is appealable under the "collateral order doctrine" of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). We agree. Judge Clarie's order satisfies the conditions necessary for an immediate appeal. The order conclusively rejects appellants' claim of statutorily guaranteed privacy rights, resolves an important issue completely separate from the merits of the action, and would be effectively unreviewable on appeal from a final judgment since the alleged damage to appellants' privacy rights would have occurred long before the end of the trial. See *Richardson–Merrell, Inc. v.*

*Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2760–61, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978)); *In re The New York Times Co.,* 828 F.2d 110, 113 (2d Cir.1987), cert. denied sub nom., *Esposito v. New York Times Co.,* — U.S. —, 108 S.Ct. 1272, 99 L.Ed.2d 483 (*"New York Times I"*).

The government concedes that we have jurisdiction to decide whether Judge Clarie's order unlawfully invades appellants' privacy interests. Nevertheless, it claims that we are precluded from considering appellants' argument that public disclosure should be prohibited because it might prejudice their right to a fair trial. The government argues that since the "fair trial" issue is not collateral to the central issues in the case and will not be irretrievably lost if review is delayed, we cannot entertain that argument under the rule announced in *Cohen.*

■ Even if we assume that appellants' alternative ground would not in its own right merit interlocutory review under *Cohen,* see *United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982), we have discretion to consider the argument where there is sufficient overlap in the factors relevant to the appealable and nonappealable issues to warrant our exercising plenary authority. *San Filippo v. United States Trust Co.,* 737 F.2d 246, 255 (2d Cir.1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) (quoting *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), aff'd in banc, 558 F.2d 646, 647–48 (1977), rev'd on other grounds sub nom., *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). In this case, there is clearly sufficient overlap in the factors relevant to appellants' "privacy" and "fair trial" arguments to warrant our consideration of both of them at the same time. Because the issue is already appealable on "privacy" grounds and because appellants made the "fair trial" argument to the district court and have done so again on appeal, we believe that concern for judicial economy dic-

tates that we should entertain this argument. Therefore, we exercise our discretion to do so. See *San Filippo,* 737 F.2d at 255.

## B. The Merits

Turning to the merits, appellants contend that an interpretation of Title III allowing disclosure of surveillance evidence in publicly filed legal materials conflicts with the statute and violates their rights to privacy and a fair trial. They claim that Title III provides only one public disclosure provision, 18 U.S.C. § 2517(3), and that provision allows disclosure only during testimony under oath in a judicial proceeding. In response, the government claims that Title III's "use and disclosure" provisions allow the unsealed use of intercepted conversations in briefs and memoranda, and that appellants' restrictive interpretation of Title III would effectively eliminate the public's constitutional right of access to materials filed in court.

Title III was the culmination of a long battle between those who would have altogether prohibited wiretaps and the material obtained thereby and those who wanted to allow the government to use wiretap material in criminal prosecutions. *National Broadcasting Co. v. United States Dept. of Justice,* 735 F.2d 51, 53 (2d Cir.1984). In the resulting statute, Congress recognized that wiretapping could be highly intrusive of privacy; the legislation therefore specifically put strict limits on wiretapping and how it could be used. *Id.* (citing S.Rep. No. 1097, 90th Cong., 2d Sess. 67, 161–65, reprinted in 1968 U.S.Code Cong. & Admin. News 2112, 2154, 2222–27).

Title 18 U.S.C. § 2517, which is part of Title III, deals with the authorization for disclosure and use of intercepted wire or oral communication. In this case, the district court held that section 2517(2) permitted the disclosure of unsuppressed, intercepted communications in briefs and memoranda. Section 2517(2) provides:

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or elec-

tronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his [or her] official duties.

The government claims that § 2517(2) permits a prosecutor to use the contents of intercepted communications in briefs and memoranda in a criminal case and in various other ways in preparation for trial. See, e.g., *United States v. Ricco,* 566 F.2d 433, 435 (2d Cir.1977) (section 2517(2) authorizes preparation of witnesses for trial); *United States v. Rabstein,* 554 F.2d 190, 193 (5th Cir.1977) (section 2517(2) authorizes use of conversations for voice identification); S.Rep. No. 1097, 90th Cong., 2d Sess. 99, reprinted in 1968 U.S.Code Cong. & Admin.News 2188 (section 2517(2) authorizes use of conversations to develop witnesses). Appellants do not seem now to dispute that prosecutors may use intercepted conversations in their preparations for trial,[1] but they contend in their brief that Title III invariably requires the prosecutor to place under seal all references to intercepted communications in briefs and memoranda. At oral argument, however, appellants modified their position and it is now clear that the issues before us are (1) who should make the decision as to what information should remain sealed or be disclosed, and (2) which party has the burden of proof with respect to whether information should remain sealed. We agree with appellants that the district court ultimately should decide the disclosure issue, and we set forth below our views regarding burden of proof.

In *New York Times I,* we found a qualified First Amendment right of access to pretrial motion papers containing Title III materials. *New York Times I,* 828 F.2d at 114. Public disclosure enhances the basic fairness of the judicial process and the appearance of fairness that is essential to public confidence in the system. Id. (citing *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9, 106 S.Ct. 2735, 2741, 92

L.Ed.2d 1 (1986) (*"Press–Enterprise II"*)). We see no meaningful distinction between the motion papers at issue in *New York Times I* and the briefs and memoranda at issue in this case. Presumably, these briefs and memoranda will be submitted in support of pretrial motions, motions at trial and post-trial motions. The qualified First Amendment right of access extends to materials filed in each of these circumstances. See id.; cf. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980) (Constitution guarantees qualified right to attend trial).

Thus, the argument that the statute always forbids public disclosure of unsuppressed, intercepted communications in briefs and memoranda cannot withstand scrutiny. As we have said before, "where a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right." *New York Times I,* 828 F.2d at 115. In reaffirming this qualified First Amendment right of public access, we stress that it applies not only when defendants want to keep information under seal but also when the government, for its own reasons, desires to keep information out of the public domain.

Our recognition of a qualified First Amendment right of access does not mean that Title III materials used by the government in connection with a criminal proceeding must automatically be disclosed. The district court must balance the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties. Id. at 116. "The job of protecting such interests rests heavily on the trial judge, since all the parties who may be harmed by disclosure are typically not before the court." Id. In its balancing test, the district court may seal or redact documents if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

---

1. Although appellants apparently argued to the district court that a specific order was required every time a prosecutor wanted to disclose an intercepted conversation in preparing a witness for trial or in obtaining a voice identification by a witness, they have not renewed that argument on appeal.

Id. (citing *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743). Redaction or sealing of intercepted conversations for privacy interests is permissible if the district judge finds that important Title III privacy interests cannot otherwise be protected and such privacy interests outweigh the public's interest in access. *In re The New York Times Co.*, 834 F.2d 1152, 1154 (2d Cir.1987) ("*New York Times II*"). Redaction or sealing of intercepted conversations in order to protect the right to a fair trial is permissible if "specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that [sealing or redaction] would prevent and, second, reasonable alternatives to [sealing or redaction] cannot adequately protect the defendant's fair trial rights." *Press–Enterprise II*, 478 U.S. at 14, 106 S.Ct. at 2743 (citing *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) ("*Press–Enterprise I*"); *Richmond Newspapers*, 448 U.S. at 581, 100 S.Ct. at 2829).

In reaffirming the First Amendment right of access to materials filed in judicial proceedings, we do not want to understate the significant privacy interests of those who have been targeted for surveillance. The protection of privacy was a very important congressional concern in the passage of Title III. See *New York Times II*, 834 F.2d at 1154; *New York Times I*, 828 F.2d at 115; *National Broadcasting Co. v. United States Dept. of Justice*, 735 F.2d at 53. "Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted." *New York Times I*, 828 F.2d at 116.

Applying this standard to the case at hand, we believe that the district court must assume responsibility for the balancing required by the cases cited above. The district court has laid down a bright-line rule which directs the parties to seal all quotations from tape recorded conversations involving third parties and allows public filing of all quotations of conversations involving defendants or witnesses. But, as appellants point out, this rule makes the government the sole arbiter of what should be publicly disclosed, since once a paper is publicly filed, the damage is done. This rule fails to give defendants the opportunity to object to the submission of certain quotations on privacy or fair trial grounds.

■ For this reason, we will modify the district court's order and hold that when the government wants to use unsuppressed Title III materials in a publicly filed memorandum or brief, the government must give defendants notice and the opportunity to object. This modification will enable the district court, upon a defendant's objection, to perform the balancing test mandated by such cases as *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743 and *New York Times II*, 834 F.2d at 1154. If the district court finds that privacy or fair trial interests cannot otherwise be protected and that these interests outweigh the public's interest in access, it should order redaction or sealing. In doing so, the district court must make findings specific enough so that a reviewing court can determine whether the sealing or redaction order was properly entered. *Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824.

In recognition of the presumption of openness created by the qualified First Amendment right of access to papers filed in court, this modification of the district court's rule will properly place the burden on defendants of both objecting to the proposed briefs and memoranda and persuading the court that the Title III material contained in them should be continued under seal. This modification will insure that the district court, not the prosecutor, makes the decision as to what Title III material should be publicly disclosed. We believe that the modification will also give appellants and others necessary protection, while not hampering unduly the government's ability to prosecute its case effi-

ciently and the public's right to know what goes on in a federal court.

The order below is affirmed with the modification that the government must give defendants adequate notice before filing any briefs and memoranda containing unsuppressed Title III material. We assume that the district court will devise an appropriate procedure.