895 F.2d 460
 17 Media L. Rep. 1364
 CERTAIN INTERESTED INDIVIDUALS, JOHN DOES I-V, WHO ARE
EMPLOYEES OF MCDONNELL DOUGLAS CORPORATION, and
McDonnell Douglas Corporation,
Appellants and Cross-appellees,
v.
The PULITZER PUBLISHING COMPANY, and Edward H. Kohn,
Appellees and Cross-appellants.
 Nos. 89-2532, 89-2593.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 18, 1989.
Decided Feb. 2, 1990.
Rehearing and Rehearing En Banc Denied March 15, 1990.
 
 Veryl L. Riddle, Norman S. London, St. Louis, Mo., for appellants and cross-appellees.
 Jim J. Shoemake, St. Louis, Mo., for appellees and cross-appellants.
 Maury S. Epner, Alexandria, Va., was for amicus.
 Before McMILLIAN, FAGG and BEAM, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 McDonnell Douglas Corp. (MDC), MDC vice-president Thomas M. Gunn, and several individual MDC employees (John Does I-V) (hereinafter appellants) appeal from a final order entered in the District Court for the Eastern District of Missouri redacting and disclosing certain materials that had been submitted in support of search warrant applications for two MDC offices. In re Search Warrant for Secretarial Area, No. 88-MISC-260 (E.D.Mo. filed Sept. 19, 1989) (clarified Sept. 28, 1989). For reversal, appellants argue the district court order improperly discloses intercepted communications to the public in violation of Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. Secs. 2510-2520 (hereinafter Title III). Appellants also argue that disclosure to the public of these materials, even as redacted, violates their constitutional right to privacy and damages their reputations. The Pulitzer Publishing Co., as the publisher of the St. Louis Post-Dispatch newspaper, and Edward H. Kohn (hereinafter appellees) filed a cross-appeal. They argue the district court erred in redacting the materials before disclosing them and in refusing to disclose the so-called Paisley affidavit.
 
 
 2
 For the reasons discussed below, we affirm in part and reverse in part. We affirm that part of the district court order refusing to disclose the Paisley affidavit and reverse that part of the district court order redacting and disclosing the search warrant materials as redacted. We dismiss the cross-appeal as moot.
 
 BACKGROUND FACTS
 
 3
 The background facts are fully set forth in our prior opinion, In re Search Warrant for Secretarial Area, 855 F.2d 569 (8th Cir.1988) (Gunn I ). On June 14, 1988, federal agents executed 44 search warrants as part of a nationwide investigation, code-named "Operation Ill Wind," into allegations of widespread fraud and bribery within the Department of Defense and the defense industry. The nature and scope of the Operation Ill Wind investigation attracted extensive national and local news coverage.
 
 
 4
 MDC was the target of two of the Operation Ill Wind search warrants. The district court authorized searches of the offices of Gunn and his secretary. In support of the applications for search warrants for the MDC offices, the government attached an affidavit, prepared by an FBI agent, which was based in large part upon telephone conversations that had been intercepted pursuant to court-ordered wiretaps (hereinafter Gunn affidavit). Also attached to the search warrant applications was another affidavit that had been filed in the District Court for the District of Columbia in support of a search warrant application for the office of Melvin Paisley (hereinafter the Paisley affidavit). Due to an oversight, the search warrant for the secretarial office, description of property to be seized and the return were not sealed. However, the search warrant for Gunn's office, the attached affidavits, and all other materials were sealed at the request of the government.
 
 
 5
 In early July 1988 appellees sought disclosure of the sealed search warrant materials, including the Gunn and Paisley affidavits. The district court denied the motion to disclose and extended the sealing order for an additional 30-day period. We affirmed the district court's order in Gunn I. We held there was a qualified first amendment right of access to judicial documents that included search warrant materials, 855 F.2d at 572-74, but that the district court had properly refused to unseal the search warrant materials in order to protect a compelling governmental interest, that is, the government's on-going criminal investigation. Id. at 574. The government subsequently sought and was granted several 30-day extensions of the sealing order.
 
 DISTRICT COURT ORDERS
 
 6
 On December 29, 1988, the government notified the district court, appellees and appellants that it no longer opposed the disclosure of most of the sealed search warrant materials, at least in redacted form, because "its investigatory objectives [had] been attained in part." The government also filed under seal a set of already-redacted affidavits. On December 30, 1988, appellees renewed their motion for disclosure of the sealed search warrant materials. On January 11, 1989, appellants filed motions opposing disclosure of the sealed materials to the public.
 
 
 7
 On September 19, 1989, the district court granted appellees' motion to unseal the sealed search warrant materials, subject to the government's redactions and redaction of the names and titles of certain other individuals. The district court decided that appellees' qualified first amendment right of access to judicial documents outweighed appellants' qualified fourth amendment privacy interests and ordered the sealed materials released. Order of Sept. 19, 1989, slip op. at 2-6. The district court later clarified that, in addition to the redactions set forth in its earlier order, the Paisley affidavit would remain under seal because that affidavit had been kept under seal in another district court and also deleted job titles and job descriptions from the search warrant materials to be released. Order of Sept. 28, 1989, slip op. at 1-2, citing In re Search Warrants (William M. Galvin), Misc. No. 87-218 (D.C.Cir. May 12, 1989). The district court also ordered job descriptions redacted from the sealed materials to be released.
 
 
 8
 The district court temporarily stayed its release order to allow appellants to appeal and seek a stay pending appeal from this court. This appeal and cross-appeal followed. We stayed the release order pending appeal.
 
 JURISDICTION
 
 9
 The government has not yet indicted any of these appellants, so there is no pending criminal case. (In fact, the attorney for one of the individual Does stated in an affidavit that he has been advised by the government that the government has no interest in prosecuting his client at the present time and does not anticipate any prosecution in the future.) The district court order is not interlocutory, and we need not resort to the collateral order doctrine. We have jurisdiction under 28 U.S.C. Sec. 1291. See Gunn I, 855 F.2d at 572; see also United States v. Gerena, 869 F.2d 82, 83 (2d Cir.1989) (Gerena ); United States v. Dorfman, 690 F.2d 1230, 1231 (7th Cir.1982) (Dorfman ).
 
 GUNN I AND TITLE III
 
 10
 Gunn I recognized a qualified first amendment right of access to documents filed in support of search warrant applications. 855 F.2d at 573-74 (McMillian, J.), 576 (Heaney, J., concurring and dissenting); cf. 575-76 (Bowman, J., concurring) (common law right of access only). Two circuits have disagreed with that holding. See In re Baltimore Sun Co., 886 F.2d 60, 64-65 (4th Cir.1989) (no first amendment right of access to search warrant affidavit; common law right of access only); Times Mirror Co. v. United States, 873 F.2d 1210, 1213-19 (9th Cir.1989) (Operation Ill Wind) (no first amendment or common law right of access to search warrant affidavits); cf. United States v. Corbitt, 879 F.2d 224, 228-29 (7th Cir.1989) (common law right of access, but no first amendment right of access, to pre-sentence reports).
 
 
 11
 In Gunn I the opposing parties were the newspaper, which sought disclosure, and the government, which opposed disclosure. MDC and Gunn filed briefs and presented oral arguments as amici curiae and opposing disclosure. They argued that the search warrant materials presumably contained confidential information, in particular wiretap information, and that the disclosure could harm not only their privacy interests, but also national security, trade secrets, and other confidential business information. The privacy argument was not necessary to our disposition of that case, and we did not, however, reach the merits of any of these arguments in Gunn I. 855 F.2d at 575. Our consideration in the present case of Title III is therefore not precluded or limited by Gunn I.
 
 RIGHT OF ACCESS V. RIGHT TO PRIVACY
 
 12
 The cast of characters in the present case is the same as it was in Gunn I. The government, however, now appears only in the supporting role of amicus on the side of the newspaper. Now that its investigatory objectives have, at least in part, been achieved, the government no longer opposes releasing the search warrant affidavits, as redacted, to the public. Thus, denial of the public's, and the newspaper's, qualified right of access to these documents can no longer be justified by a compelling governmental interest in protecting an on-going criminal investigation. Appellants argue that another compelling interest justifies non-disclosure. Appellants argue that their privacy interests outweighs the public's interest in access.
 
 
 13
 Appellants argue the district court erred in releasing the redacted search warrant materials because these materials contain intercepted communications, that is, wiretap information. Appellants argue that Title III protects their interest in conversational privacy by prohibiting wiretapping except when authorized by court order and by restricting the use and disclosure of wiretap information. Appellants argue that the only way wiretap information can lawfully be disclosed to the public is through "testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." 18 U.S.C. Sec. 2517(3); see Dorfman, 690 F.2d at 1233. Appellants also argue that disclosure of the redacted search warrant materials to the public is inconsistent with another provision of Title III, 18 U.S.C. Sec. 2518(8), which provides that the recordings of intercepted communications, wiretap applications and orders authorizing wiretaps must be sealed and that the applications and orders can be disclosed only upon a showing of good cause. See In re Application of National Broadcasting Co., 735 F.2d 51, 55 (2d Cir.1984) (disclosure of wiretap applications and orders only for "good cause" under 18 U.S.C. Sec. 2518(8)); In re Applications of Kansas City Star, 666 F.2d 1168, 1176 (8th Cir.1981) (same).
 
 
 14
 Appellees note that they do not seek access to the wiretap applications or orders authorizing the wiretaps. They seek access to the search warrant affidavits only. Their principal argument is that the first amendment right of access to judicial documents recognized in Gunn I cannot be overridden by Title III, which is only a statute. See In re New York Times Co., 828 F.2d 110, 115 (2d Cir.1987) (New York Times I ), cert. denied, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). Appellees urge us to defer to the district court's assessment that the public's right of access to information about the government's investigation into allegations of fraud and bribery in the defense department and the defense industry outweighed appellants' privacy interests, interests which had been much diminished by other, prior disclosures. Appellees also argue that Title III prohibits disclosure of the recordings or transcripts of intercepted communications, but does not bar disclosure of references to, or conclusions drawn from, intercepted communications by investigative or law enforcement officers that are contained in the search warrant affidavits. Appellees argue that the officers' use of their knowledge of the contents of intercepted communications in search warrant affidavits is "appropriate to the proper performance of [their] official duties" under 18 U.S.C. Sec. 2517(2). Appellees also argue that because search warrant affidavits are prepared under oath or affirmation, they fall within the 18 U.S.C. Sec. 2517(3) exception.
 
 
 15
 On cross-appeal, appellees argue the district court erred in releasing the search warrant affidavits as redacted by the government and in keeping the Paisley affidavit under seal.
 
 
 16
 The government argues that nothing in Title III or its legislative history requires the permanent sealing of search warrant affidavits that contain wiretap information. The government argues that 18 U.S.C. Sec. 2518(8)(a) expressly provides that only the recordings of the intercepted conversations be sealed and that 18 U.S.C. Sec. 2518(8)(b) requires that applications for and orders authorizing wiretaps be sealed unless good cause is shown for their disclosure. The government emphasizes that in the present case disclosure of the actual intercepted communications or wiretap applications and orders is not at issue. Rather, what is at issue, according to the government, is merely the "incidental" disclosure of wiretap information in documents that are routinely filed, without seal, as a matter of public record. See Fed.R.Crim.P. 41(g). The government argues that nothing in Title III bars the "incidental" disclosure of wiretap information lawfully used in search warrant affidavits. The government argues that 18 U.S.C. Sec. 2517(2) permits the use of wiretap information in search warrant affidavits and other investigative and prosecutorial uses. See Gerena, 869 F.2d at 85 (18 U.S.C. Sec. 2517(2) authorizes use of wiretap information in trial briefs and memoranda), citing United States v. Ricco, 566 F.2d 433, 435 (2d Cir.1977) (18 U.S.C. Sec. 2517(2) authorizes use of wiretap information to refresh recollection of witness), cert. denied, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978), and United States v. Rabstein, 554 F.2d 190, 193 (5th Cir.1977) (18 U.S.C. Sec. 2517(2) authorizes use of wiretap information for purposes of voice identification).
 
 
 17
 We agree that the right to conversational privacy is protected by the fourth amendment. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Olmstead v. United States, 277 U.S. 438, 478-79, 48 S.Ct. 564, 572-73, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). However, the fourth amendment's protection of privacy is not absolute and "yields among other things to imperative needs of law enforcement." Dorfman, 690 F.2d at 1234.
 
 
 18
 Title III was the culmination of a long battle between those who would have altogether prohibited wiretaps and the material obtained thereby and those who wanted to allow the government to use wiretap material in criminal prosecutions. In the resulting statute, Congress recognized that wiretapping could be highly intrusive of privacy; the legislation therefore specifically put strict limits on wiretapping and how it could be used. In construing the statute, it should always be remembered that "although Title III authorizes invasions of individual privacy under individual circumstances, the protection of privacy was an overriding congressional concern."
 
 
 19
 In re Application of National Broadcasting Co., 735 F.2d at 53 (citations omitted), citing Gelbard v. United States, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (footnote omitted).
 
 
 20
 [Title] 18 U.S.C. Sec. 2511 subjects to criminal and civil liability anyone who wiretaps or discloses information so obtained except as provided in Title III. Sections 2516 and 2518 provide for application to be made to a judge in order to obtain authorization for a wiretap and establish strict standards which must be applied by the judge in determining whether such authorization is appropriate. Section 2515 provides that wiretap evidence may not be received in evidence in any trial, hearing or other proceeding before a federal or state governmental body if disclosure of the information would violate Title III. The first two subsections of Section 2517 provide authorization to investigative or law enforcement officials to disclose and use wiretap information in the performance of their official duties and to provide wiretap information to other law enforcement officials. Section 2517(3) provides that any person who has properly obtained wiretap information may disclose such information "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." Section 2518(8)(a) provides for the sealing of the contents of intercepted communications and that the presence of the seal, or a satisfactory explanation for the absence thereof, is a prerequisite for the use or disclosure of wiretap information under Section 2517(3).
 
 
 21
 New York Times I, 828 F.2d at 114-15.
 
 
 22
 First, we do not agree that disclosure of wiretap information in search warrant affidavits is authorized by 18 U.S.C. Sec. 2517(3) because search warrant affidavits are prepared under oath or affirmation. Section 2517(3) provides that
 
 
 23
 [a]ny person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.
 
 
 24
 In our view, however, this exception is testimonial, that is, it authorizes disclosure only "while giving testimony." Dorfman, 690 F.2d at 1234 ("The privilege to disclose created by section 2517(3) continues in force 'while giving testimony.' "); see United States v. Rosenthal, 763 F.2d 1291, 1293-94 (11th Cir.1985) (wiretap information admitted into evidence); In re Application of National Broadcasting Co., 735 F.2d at 54; United States v. Ricco, 566 F.2d at 435.
 
 
 25
 Another provision of Title III, 18 U.S.C. Sec. 2517(2), however, authorizes the use of wiretap information in search warrant affidavits. Section 2517(2) provides that "[a]ny investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his [or her] official duties." The legislative history of Title III indicates that Congress "envision[ed] use of the contents of intercepted communications ... to establish probable cause to search." S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2112, 2188. We think, however, that disclosure under 18 U.S.C. Sec. 2517(2) is limited by the scope of the investigative or law enforcement officer's official duties. Thus, in the present case the FBI agents lawfully used the wiretap information to prepare the search warrant affidavits and, in performance of their official duties, lawfully disclosed the wiretap information only to others who, as noted by Judge Posner in Dorfman, 690 F.2d at 1234, are "professionally interested stranger[s]."
 
 
 26
 Nonetheless, disclosure to a limited audience of "professionally interested strangers" in the context of their official duties is not the equivalent to disclosure to the public. "Title III does not allow public disclosure of all lawfully obtained wiretap evidence just because a few officers are privy to its contents; if it were construed to do so, much of the statute would be superfluous, for example, 18 U.S.C. Secs. 2517(1)-(3)." Id. at 1234-35. We do not agree that once wiretap information is used in search warrant affidavits, it is no longer subject to Title III's restrictions upon its use and disclosure. We do not think that Title III's restrictions can be so easily avoided. The use and disclosure of wiretap information in search warrant affidavits pursuant to 18 U.S.C. Sec. 2517(2) cannot transform the wiretap information into non-wiretap information unprotected by Title III. Acceptance of this argument would create a very large loophole in Title III. This argument was rejected by the Second Circuit in two cases involving pre-trial motions and trial briefs and memoranda containing wiretap information. See Gerena, 869 F.2d at 84-85 (briefs and trial memoranda); New York Times I, 828 F.2d at 114-15 (pre-trial motion papers). In each case the wiretap information, even though it was contained in publicly filed pre-trial or trial documents, retained both its character as wiretap information and the protections against disclosure provided in Title III.
 
 
 27
 Recognition that the right of privacy is protected by Title III does not resolve our disclosure dilemma. "[W]here a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right." New York Times I, 828 F.2d at 115 (footnote omitted). In the present case, two important constitutional rights conflict. Neither is absolute; each is qualified. See Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 7-9, 106 S.Ct. 2735, 2739-41, 92 L.Ed.2d 1 (1986) (first amendment); Berger v. New York, 388 U.S. 41, 49, 87 S.Ct. 1873, 1878, 18 L.Ed.2d 1040 (1967) (fourth amendment). The qualified first amendment right of access does not mean that these materials must automatically be disclosed. Nor does the qualified fourth amendment right of privacy, and the protections of Title III, mean that these materials must remain permanently sealed. We agree with the district court that what is required is a careful balancing of the public's interest in access against the individual's privacy interests, and we commend the district court for its efforts to protect and accommodate the conflicting interests in access and privacy.
 
 
 28
 Under the Second Circuit test discussed above, "[r]edaction or sealing of intercepted conversations [in order to protect] privacy interests is permissible if the district judge finds that important Title III privacy interests cannot otherwise be protected and such privacy interests outweigh the public's interest in access." Gerena, 869 F.2d at 86, citing In re New York Times Co., 834 F.2d 1152, 1154 (2d Cir.1987) (New York Times II ); see In re Search Warrants Issued on June 11, 1988, 710 F.Supp. 701, 704-05 (D.Minn.1989) (Unisys ) (Operation Ill Wind search warrant materials redacted and then disclosed). In general, we think the test devised by the Second Circuit should be followed, with one important modification. We believe that the procedural posture of the government's criminal investigation must be considered in the balancing process and that the absence of an indictment weighs heavily in favor of the privacy interests and non-disclosure.
 
 
 29
 The status of the government's criminal investigation was not a factor in either New York Times I, New York Times II or Gerena because in each of those cases the motions for disclosure of wiretap information arose after indictment and involved either pre-trial or trial matters. See also Dorfman, 690 F.2d at 1231 (after indictment). However, in the present case, none of the individuals whose privacy interests may be compromised by disclosure of wiretap information has been indicted. We think the lack of an indictment is critical because
 
 
 30
 [w]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations. The court of public opinion is not the place to seek to prove them. If the Government has such proof, it should be submitted to a grand jury, an institution developed to protect all citizens from unfounded charges. All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.
 
 
 31
 United States v. Ferle, 563 F.Supp. 252, 254 (D.R.I.1983); see also Illinois v. Abbott Assocs., 460 U.S. 557, 565-71, 103 S.Ct. 1356, 1360-63, 75 L.Ed.2d 281 (1983) (holding state attorney general does not have special right of access to grand jury materials). Cf. Times Mirror Co. v. United States, 873 F.2d at 1216 (public access to search warrant materials pre-indictment would violate grand jury secrecy and not protect persons accused but exonerated by grand jury from public ridicule).
 
 
 32
 Moreover, in the absence of an indictment and a pending criminal trial, individuals whose wiretapped conversations are disclosed have no judicial forum in which they may potentially vindicate themselves or their conduct. Without an indictment, there can be no trial and, from their perspective, no acquittal. Thus,
 
 
 33
 [w]here privacy interests in wiretapped conversations are asserted, the court must consider how disclosure of the information would affect the persons identified and society's interests in disclosure. A number of factors enter into this analysis, including the extent of public knowledge of the material, the accusatorial nature of the material, and the need for public scrutiny of the government operations disclosed in the material. The burden is on those opposing disclosure to show that the privacy interests outweigh the public's right of access. When redaction is required to protect privacy interests, it must be narrowly tailored to allow as much disclosure as is feasible.
 
 
 34
 Unisys, 710 F.Supp. at 705 (citations omitted).
 
 
 35
 In the present case, appellants have not yet been indicted even though almost 18 months has passed since the execution of the search warrants. Other individuals and corporations targeted by Operation Ill Wind search warrants have been indicted (and quite a few have already pleaded guilty or have been tried and convicted of various offenses). As we noted in Gunn I, the search warrant affidavits "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved." 855 F.2d at 574. These search warrant affidavits implicate some individuals directly in criminal misconduct, others only indirectly. Disclosure could seriously damage their reputations and careers. Disclosure would place those individuals in essentially the same precarious position as unindicted co-conspirators. See United States v. Anderson, 799 F.2d 1438, 1441-42 (11th Cir.1986) (newspaper not entitled to view document describing possible similar acts evidence or list of persons named in bill of particulars as unindicted co-conspirators), cert. denied, 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 760 (1987); United States v. Smith, 776 F.2d 1104, 1112-15 (3d Cir.1985) (list of unindicted conspirators sealed).
 
 
 36
 In sum, we think the pre-indictment status of the government's criminal investigation tips the balance decisively in favor of the privacy interests and against disclosure of even the redacted versions of the search warrant affidavits at this time. This opinion in no way restricts appellees from investigating and obtaining the information contained in the search warrant materials from other sources or from seeking disclosure under the Second Circuit test, after indictment, of the wiretap information contained in the search warrant materials or other judicial documents.
 
 
 37
 Accordingly, the order of the district court is affirmed in part and reversed in part. The cross-appeal is dismissed.