10-462-cv
SEC v. Rajaratnam, Chiesi

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: July 8, 2010                    Decided: September 29, 2010)

Docket No. 10-462-cv

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

— v.—

RAJ RAJARATNAM, DANIELLE CHIESI,

*Defendants-Appellants,*

GALLEON MANAGEMENT, LP, ALI HARIRI, ALI T. FAR, ANIL KUMAR, CHOO-BENG LEE, DAVID PLATE, DEEP SHAH, FAR & LEE LLC, GAUTHAM SHANKAR, MARK KURLAND, NEW CASTLE FUNDS LLC, RAJIV GOEL, ROBERT MOFFAT, ROOMY KHAN, S2 CAPITAL MANAGEMENT, LP, SCHOTTENFELD GROUP LLC, SPHERIX CAPITAL LLC, STEVEN FORTUNA, ZVI GOFFER,

*Defendants.*

B e f o r e:

RAGGI, LYNCH, and CHIN, *Circuit Judges*.

Defendants-Appellants Raj Rajaratnam and Danielle Chiesi appeal from a

discovery order of the district court (Jed S. Rakoff, Judge) compelling them to disclose to Plaintiff-Appellee Securities and Exchange Commission wiretapped conversations provided to them by federal prosecutors in a related criminal case for use in this civil enforcement action against Appellants. We hold that, while Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, does not absolutely prohibit the disclosure of wiretap conversations by defendants in a civil enforcement proceeding to a civil enforcement authority where the defendants have received the wiretaps lawfully pursuant to Title III, a district court addressing a discovery demand for such materials must balance the right of access to these materials against the privacy interests at stake. In the instant case, we conclude that although we have no jurisdiction over an interlocutory appeal from this order, a writ of mandamus is warranted, because the district court clearly exceeded its discretion in ordering disclosure of thousands of conversations involving hundreds of parties, prior to any ruling on the legality of the wiretaps and without limiting the disclosure to relevant conversations.

VACATED AND REMANDED.

_____

KEVIN P. MCGRATH, Senior Trial Counsel, Securities and Exchange Commission, New York, New York (Valerie A. Szczepanik, Senior Trial Counsel, Securities and Exchange Commission, New York, New York; David M. Becker, General Counsel, Mark D. Cahn, Deputy General Counsel, Jacob H. Stillman, Solicitor, Mark Pennington, Assistant General Counsel, David Lisitza, Senior Counsel, Securities and Exchange Commission, Washington, DC, *on*

*the brief*), *for Plaintiff-Appellee.*

PATRICIA A. MILLETT, Akin Gump Strauss Hauer & Feld LLP, Washington, DC (Robert H. Hotz, Jr., Samidh Guha, Akin Gump Strauss Hauer & Feld LLP, New York, New York; John M. Dowd, Terence J. Lynam, William E. White, Kevin R. Amer, Issaac J. Lidsky, Anne J. Lee, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, Alan R. Kaufman, James M. Keneally, Thomas B. Kinzler, Kelley Drye & Warren LLP, New York, New York, *on the brief*), *for Defendants-Appellants.*

REED M. BRODSKY, (Andrew L. Fish, *on the brief*), Assistant United States Attorneys *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Amicus Curiae United States of America in support of Plaintiff-Appellee.*

Craig Green, Associate Professor, Temple Law School, Philadelphia, Pennsylvania, Douglas R. Jensen, Park & Jensen LLP, New York, New York, *for Amici Curiae John Does Number One, Two and Three.*

Marc Rotenberg, (John Verdi, Jared Kaprove, *on the brief*), Electronic Privacy Information Center, Washington, DC, *for Amicus Curiae Electronic Privacy Information Center (EPIC) in support of Defendants-Appellants.*

GERARD E. LYNCH, *Circuit Judge*:

Defendants-Appellants Raj Rajaratnam and Danielle Chiesi (hereinafter, "Appellants") appeal from a district court (Jed S. Rakoff, Judge) discovery order compelling Appellants to disclose thousands of wiretapped conversations, originally provided to Appellants by the United States Attorney's Office ("USAO") in parallel criminal proceedings, to Plaintiff-Appellee Securities and Exchange Commission

3

("SEC") for use in this civil enforcement action against Appellants. We conclude that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-2522, does not absolutely prohibit the disclosure of wiretapped conversations from defendants in a civil enforcement proceeding to a civil enforcement agency where the defendants have received those conversations lawfully pursuant to Title III. However, in deciding whether and how much to disclose, a district court must balance the agency's right of access to these materials in civil discovery against the privacy interests at stake. In the instant case, we conclude that although there is no interlocutory jurisdiction over an appeal from this order, a writ of mandamus is warranted, because the district court clearly exceeded its discretion in ordering disclosure of thousands of conversations involving hundreds of parties, prior to any ruling on the legality of the wiretaps and without limiting the disclosure to relevant conversations.

## BACKGROUND

On October 16, 2009, the United States Attorney's Office for the Southern District of New York unsealed criminal complaints charging several defendants, including Appellants Raj Rajaratnam and Danielle Chiesi, with securities fraud and conspiracy. The same day, the SEC filed a civil complaint against Appellants and others, charging them with insider trading and conspiracy based on the same conduct at issue in the criminal case. Two months later, Appellants were indicted for insider trading and conspiracy.

The Appellants' criminal case was assigned to Judge Richard Holwell. See United States v. Rajaratnam, No. 09 Cr. 1184 (RJH). Meanwhile, a separate indictment charging similar crimes against other defendants, arising from the same investigation, was assigned to Judge Richard Sullivan. See United States v. Goffer, No. 10 Cr. 56 (RJS). The instant civil SEC action was assigned to yet a third judge, Judge Jed Rakoff.

While the Appellants' civil and criminal cases are proceeding before different judges, both cases revolve around the same allegations: that Appellants engaged in widespread and repeated insider trading at several hedge funds, including Galleon Management, LP, a firm founded by Appellant Rajaratnam, where he remains the managing general partner, and New Castle Funds LLC, where Appellant Chiesi was a hedge fund manager and investment consultant. According to the SEC, the scheme, which allegedly generated over $52 million in illegal profits, involved tips from insiders concerning "market moving events such as quarterly earnings announcements, takeovers, and material contracts," that spurred the defendants to trade shares of numerous public companies illegally.

The criminal investigation into these allegations included court-ordered wiretapping of communications between the defendants and others. According to Appellants, the wiretapped conversations, which spanned sixteen months, included 18,150 communications involving 550 separate individuals, which were intercepted from ten separate telephones – including Appellants' home, office and mobile phones. As part

5

of criminal discovery, the USAO provided to Appellants copies of these wiretapped communications, the orders authorizing the wiretaps, and the government's applications for those orders. The USAO did not, however, share those materials with the SEC.[1]

The SEC instead sought access to the wiretap recordings by demanding them from Appellants in discovery in the civil case before Judge Rakoff. Appellants opposed the demand on the grounds that the materials were not relevant and that disclosure was prohibited by Title III, the statute that authorizes such wiretaps. The SEC then moved to compel disclosure.

The district court heard oral argument on the motion, and, pursuant to a written opinion, ordered Appellants to produce the wiretapped conversations to the SEC and to any other party to the civil action that demanded them.[2] The court noted that while the USAO had not shared the wiretap materials with the SEC, the Appellants possessed these materials, they apparently asserted the right to share them with other defendants pursuant to a joint defense agreement, and no protective order had been issued in the criminal case barring Appellants from using the wiretap materials in the civil case, or from disclosing them to the SEC. It found that "the notion that only one party to a litigation should have

[1] Apparently, the USAO inadvertently provided the SEC with a small group of wiretap recordings that were later retracted. Although initially contending in the district court that it had legal authority to share the materials with the SEC in its discretion, the USAO now takes the position that it lacks such authority.

[2] While the SEC initially sought both the wiretapped conversations and "related materials," the court only ordered the disclosure of the conversations.

6

access to some of the most important non-privileged evidence bearing directly on the case runs counter to basic principles of civil discovery in an adversary system and therefore should not readily be inferred, at least not when the party otherwise left in ignorance is a government agency charged with civilly enforcing the very same provisions that are the subject of the parallel criminal cases arising from the same transactions."[3]

The court acknowledged Appellants' argument that the privacy and other concerns that led Congress to pass Title III weighed in favor of reading the statute as implicitly prohibiting any disclosure of recordings not expressly authorized, but considered that argument foreclosed by our statement in In re Newsday, Inc., 895 F.2d 74 (2d Cir. 1990), that while "Title III generates no right of access, [] it is a non-sequitur to conclude the obverse: that Congress intended § 2517 . . . to forbid public access by any other means on any other occasion." Id. at 77. The court then noted that Title III made clear that "[a]ny person" could disclose wiretap contents during testimony, and therefore it would be "absurd for the civil attorneys preparing the witness not to have access to the wiretap recordings beforehand."

To accommodate the relevant privacy interests and because Appellants indicated that they would move to suppress the wiretap recordings on the ground that they were

---

[3] Implicitly balancing the relevant interests, the court noted that if a purely private plaintiff or third party sought access to such wiretap materials a court might find the presumption in favor of protecting privacy to outweigh a similar discovery request.

unlawfully obtained, the court entered a protective order prohibiting disclosure of the wiretap recordings to any non-party until, at a minimum, a court of competent jurisdiction had ruled on the suppression motion. Appellants appealed the order and we granted a stay pending appeal.[4]

At the time of the district court's order, it had scheduled the civil trial to begin on August 2, 2010. However, when Judge Holwell, who is presiding over Appellants' parallel criminal proceeding, set the criminal trial for October 25, 2010, the USAO intervened and moved to adjourn the civil trial until after the completion of the criminal trial. While no party opposed this adjournment, the district court reserved judgment "because of the strong public interest in having cases of this kind move forward promptly."

Following our grant of a stay of the discovery order, however, the court found that this stay, along with an indication from the bench during the oral argument on the stay motion that the appeal could be affected by a resolution of the suppression motion in the criminal case then scheduled to be heard on June 17, 2010, "tipped the balance toward adjournment." Because resolution of the wiretap issue could not reasonably be expected prior to July 2010 and because counsel for the Appellants would by then be preoccupied

_____

[4] Appellants had moved in the district court for a stay pending appeal and a certification permitting immediate appeal pursuant to 28 U.S.C. § 1292(b), but the court denied both, noting that it regarded the motion for a stay as "highly prejudicial" to the SEC, and the motion for certification as "frivolous."

preparing for the October criminal trial, the court found that the August trial date was no longer practical and therefore, "with reluctance," adjourned the civil trial until February 14, 2011.[5] At present, the suppression motion has yet to be decided, and the civil trial remains scheduled for February 2011.

**DISCUSSION**

In deciding this appeal, we first address whether we have jurisdiction to review the district court's interlocutory order, and conclude that we lack jurisdiction to hear an appeal of the district court's discovery order. We then consider whether a writ of mandamus is warranted, and conclude that it is, because the district court clearly exceeded its discretion by ordering disclosure of the wiretaps without awaiting a ruling on the legality of the wiretaps or limiting the disclosure order to relevant conversations.

I. Do We Have Appellate Jurisdiction to Review the District Court's Order?

Section 1291 of the Judicial Code provides federal courts of appeals with jurisdiction to review "final decisions of the district courts." 28 U.S.C. § 1291; accord Mohawk Indus., Inc. v. Carpenter, 130 S.Ct. 599, 603 (2009). A "final decision is typically one by which a district court disassociates itself from a case." Mohawk, 130

_____

[5] Since the district court's adjournment, the hearing on the suppression motion before Judge Holwell was postponed, and an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) has been scheduled for October 4, 2010. A suppression motion addressed to the same wiretap orders is expected to be filed in the related criminal case before Judge Sullivan, with briefing to conclude on December 10, 2010 and a status hearing scheduled for December 29, 2010.

S.Ct. at 604-05 (brackets and internal quotation marks omitted). However, "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review," id. at 603, quoting <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546 (1949), are also considered "final decisions" for purposes of the statute. <u>Id</u>. This small set of interlocutory orders that are deemed "final" "includes only decisions [(1)] that are conclusive, [(2)] that resolve important questions separate from the merits, and [(3)] that are effectively unreviewable on appeal from the final judgment in the underlying action." <u>Id</u>. at 605 (internal quotations marks omitted).

In determining whether an interlocutory order fits within this exception, we do not engage in an "individualized jurisdictional inquiry" into the specific order appealed from. <u>Id</u>. (internal quotation marks omitted). Instead, our focus is on "the entire category to which a claim belongs." <u>Id</u>. (internal quotation marks omitted). So long as the category of claim can be vindicated by other means, "the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." <u>Id</u>. (internal quotation marks and brackets omitted). The Supreme Court has emphasized that the collateral order exception to the final judgment rule must "never be allowed to swallow the general rule that a party is entitled to a single appeal," and that "[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." <u>Id</u>. (internal quotation marks omitted); <u>see</u>

10

also id. at 609 ("[W]e reiterate that the class of collaterally appealable orders must remain 'narrow and selective in its membership.'").

The parties disagree about how to define the category of orders to which the challenged order belongs. The SEC would define the category as "civil discovery orders requiring disclosure of wiretap materials," while Appellants would define it as "wiretap disclosures to third parties." We conclude that the category should be described more broadly as discovery orders allegedly adverse to a claim of privilege or privacy, and that, as we recognized in our recent decision in In re City of New York, 607 F.3d 923 (2d Cir. 2010), we lack jurisdiction to review such orders.

In City of New York, we addressed whether or not a writ of mandamus was appropriate to review a discovery order requiring the City of New York to produce "sensitive intelligence reports" prepared by undercover police officers to class action plaintiffs. Id. at 928. The City argued that the documents were protected from disclosure by the "law enforcement privilege." Id. In explaining why a petition for mandamus was the only "adequate means" for the City to seek review of the order, we found that it was "clear that the City cannot challenge the District Court's order by means of an interlocutory appeal." Id. at 933. We noted that "the Supreme Court has recently clarified [that] the collateral order doctrine does not extend to disclosure orders adverse to a claim of privilege." Id., citing Mohawk, 130 S.Ct. at 609 (internal quotation marks omitted). The Supreme Court has made clear that when a court rejects a claim of

11

privilege, the losing party must "pursue other 'avenues of review apart from collateral order appeal,' including, 'in extraordinary circumstances,' a 'petition to the court of appeals for a writ of mandamus.'" Id., quoting Mohawk, 130 S.Ct. at 607 (brackets omitted).

While it is true that both Mohawk and City of New York dealt with claims of common-law evidentiary privilege, and the instant case involves statutorily recognized privacy rights that carry "constitutional overtones," we do not think that difference is sufficient to take the instant case outside of our holding in City of New York. Indeed, while Appellants do not phrase their argument as involving a "privilege," in effect, they seek a finding that Title III makes wiretap materials "privileged" vis-à-vis a civil enforcement agency's discovery request. Moreover, while the claimed "privilege" at issue in the instant case derives from statute, City of New York also dealt with a privilege that was at least partially embodied in statutes. See id. at 941 (noting that the law enforcement privilege "developed at common law from executive privilege," but that it had "been largely incorporated into both New York state and federal statutory law." (footnotes omitted)). In any event, even if City of New York had dealt with a purely common-law privilege, we do not see why the fact that the instant case involves a claimed statutory privacy right would take it outside our holding in City of New York that disclosure orders adverse to a claim of privilege are categorically not immediately reviewable.

12

For this reason, while there may be arguments in any particular case, as there are in the instant case, that the rejection of a claim of privilege by a discovery order impinges significant interests, there is no interlocutory jurisdiction to review the order.[6]

II. Is a Writ of Mandamus Appropriate?

Even though we lack interlocutory jurisdiction to review the district court's order, a writ of mandamus may still be appropriate. However, we invoke this "extraordinary remedy" only in "exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion." Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380 (2004) (citations and internal quotation marks omitted). A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." Id. (internal quotation marks omitted); see also City of New York, 607 F.3d at 943. To issue the writ, three conditions must be satisfied:

> (1) "the party seeking issuance of the writ must have no other adequate means to attain the relief it desires"; (2) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right of issuance of the writ is clear and indisputable."

---

[6] Appellants rely heavily on United States v. Gerena, 869 F.2d 82 (2d Cir. 1989), where we found that we had collateral order jurisdiction to review an order permitting Title III recordings to be used in public memoranda. Id. at 83-84. The challenged order requires disclosure subject to a protective order that does *not* permit public disclosure of the wiretap information at issue without further order of the court. In any event, to the extent Gerena supports the proposition that collateral order jurisdiction is available in a case involving a discovery order adverse to a privilege, its precedential effect is undermined by the Supreme Court's holding in Mohawk.

13

City of New York, 607 F.3d at 932-33, quoting Cheney, 542 U.S. at 380-81 (brackets omitted).

The writ is appropriate here because no adequate alternative remedies are available, the issue involved is novel and significant and its resolution will aid the administration of justice, and Appellants have shown a "clear and indisputable right" to the writ, because the district court's order undeniably failed to weigh properly the privacy interests at stake against the SEC's right to disclosure. Specifically, the district court failed to ascertain the legality of the wiretaps at issue, a critical factor in determining how to weigh the competing interests. Further, it ordered a wholesale disclosure of the wiretaps without regard to the relevancy of particular recordings, another factor that necessarily informs an assessment of weight.

A. Whether Alternative Remedies are Adequate

Despite the SEC's argument to the contrary, the privacy interests harmed by the disclosure order here could not be adequately remedied on final appeal.

In Bartnicki v. Vopper, 532 U.S. 514 (2001), the Supreme Court noted that

> the disclosure of the contents of a private conversation *can be an even greater intrusion on privacy than the interception itself*. As a result, there is a valid independent justification for prohibiting such disclosures by persons who lawfully obtained access to the contents of an illegally intercepted message, even if that prohibition does not play a significant role in preventing such interceptions from occurring in the first place.

14

Id. at 533 (emphasis added). Similarly, in Gelbard v. United States, 408 U.S. 41 (1972), the Court noted that "[c]ontrary to the Government's assertion that the invasion of privacy is over and done with, to compel the testimony of [] witnesses compounds the statutorily proscribed invasion of their privacy by adding to the injury of the interception the insult of compelled disclosure." Id. at 51-52. In short, there is a distinct privacy right against the *disclosure* of wiretapped private communications that is separate and apart from the privacy right against the *interception* of such communications. Because suppressing illegally intercepted evidence, or finding the discovery order erroneous on appeal of a final judgment, would not remedy the harm done to the right against disclosure, we find that, at least in the context of the instant case, the right to prevent unauthorized disclosure of intercepted communications could not be adequately vindicated on final appeal. As in City of New York, any "sensitive information contained in the [recordings] will, upon final judgment, already have been exposed." 607 F.3d at 934 (finding appeal from final judgment inadequate to review disclosure of police reports) (internal quotation marks omitted). The tapes will have been listened to, and the privacy rights of the parties to the conversations will forever have been harmed by the very act of exposure.

In the instant case, the harm to this interest is compounded by the fact that the ordered disclosure affects the rights of numerous innocent parties, who will have even

15

their irrelevant conversations disclosed to the SEC and other parties, whose constitutional and statutory rights may already have been violated should the wiretaps prove to have been illegal, and who will have no means of vindicating *their* privacy rights in any final appeal.

The SEC's heavy reliance on United States v. Miller, 14 F.3d 761 (2d Cir. 1994), for the proposition that an order disclosing wiretap evidence can be adequately remedied on direct appeal is misplaced. In Miller, we did find that final review was adequate to vindicate the privacy rights at issue in certain defendants' appeal of the denial of motions to prohibit the entry of wiretapped conversations into evidence. In Miller, however, the tapes at issue had already been played at the defendants' public trials after a judicial determination that the interceptions had been lawful. Id. at 764. In addition, of the two defendants involved in Miller, one had already been found guilty and sentenced, and the other had been convicted and awaited sentencing. Id. at 762-63. There was no reason to hear an appeal before sentencing instead of after it. More fundamentally, however, the defendant's right against disclosure was not at issue; illegally obtained or not, the conversations had already been disclosed to the public. See id. at 764 (finding defendants' appeal moot because "the tapes . . . have already been played at . . . trial"). Indeed, we noted in Miller that because the conversations had been played at trial, "the 'cat [was] out of the bag' so to speak, and there [was] no way the trial court or this Court [could] put it back in." Id. Unlike Miller, where the only relevant privacy right at issue

16

was the right against unlawful interception, in the instant case the cat is not yet out of the bag, and we must consider both the Appellants' (and others') rights against unlawful interception *and* their rights against the initial disclosure. Once the "cat *is* out of the bag," the right against disclosure cannot later be vindicated.

This finding, of course, does not mean that a writ of mandamus will always be appropriate to remedy an erroneous disclosure order. The other elements of the test for the appropriateness of the writ must still be met. However, given the particular circumstances of this case, where the privacy rights of hundreds of parties are at issue, the legality of the interceptions has not yet been decided, and the disclosure order encompasses both relevant and irrelevant conversations, we find final review would be an inadequate alternative remedy.[7]

B. Whether the Writ is Appropriate in the Circumstances of This Case

While we have "expressed reluctance to issue writs of mandamus to overturn discovery rulings," see, e.g., City of New York, 607 F.3d at 939 (internal quotation marks omitted), "when a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment, the writ of mandamus provides an escape hatch from the finality rule." In re Von Bulow, 828 F.2d 94, 97 (2d Cir. 1987) (internal quotation marks and brackets omitted). A writ of

---

[7] The SEC has also failed to point to any other alternative remedy that might be adequate. Appellants attempted to have the district court certify the question for appeal pursuant to 28 U.S.C. § 1292(b), but the district court denied that motion.

17

mandamus is "appropriate" to review a pretrial discovery order if the petitioner demonstrates "'the presence of a novel and significant question of law . . . and . . . the presence of a legal issue whose resolution will aid in the administration of justice.'" City of New York, 607 F.3d at 939, quoting United States v. Coppa, 267 F.3d 132, 137-38 (2d Cir. 2001); see also In re Sims, 534 F.3d 117, 128-29 (2d Cir. 2008). We conclude that the writ is appropriate in the circumstances of this case, because the petition raises a "novel and significant question of law"– specifically, when a civil discovery order requiring defendants to disclose wiretap materials to a civil enforcement agency would be appropriate – and resolving that issue "will aid in the administration of justice." See City of New York, 607 F.3d at 939-43; see also Coppa, 267 F.3d at 137-38.

While we have addressed the propriety of disclosures of wiretap evidence in civil proceedings before, our prior cases have never involved the circumstances here: where there are parallel civil and criminal trials, where the government has disclosed materials to a criminal defendant, where the legality of the wiretaps has yet to be adjudicated, and where a civil enforcement agency suing the defendant in parallel proceedings seeks access to these materials from the defendant. The issues in this appeal are therefore clearly novel. In addition, given the importance of both the privacy rights at stake and the public interest in civil enforcement of the law, these issues are also significant. Cf. City of New York, 607 F.3d at 941-42.

Resolving the issues in this appeal would also "aid in the administration of justice"

18

by helping district courts avoid erroneous discovery orders in the future. As we stated in City of New York, "we have previously recognized that the resolution of a novel and significant privilege question in a mandamus proceeding will 'aid the administration of justice.' Addressing the merits of this petition . . . may 'forestall future error in trial courts' by correcting a privilege determination with a potentially broad applicability and influence." Id. at 942, quoting von Bulow, 828 F.2d at 99.

C. Whether There is a "Clear and Indisputable Right" to the Writ

A district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," or if it has "rendered a decision that 'cannot be located within the range of permissible decisions.'" Sims, 534 F.3d at 132 (citations omitted). We will issue the writ only if a district court committed a "clear and indisputable" abuse of its discretion in one of these ways. See City of New York, 607 F.3d at 929. As we explain below, it is "clear and indisputable" that, given the privacy interests at stake, the district court's decision ordering disclosure of the wiretap conversations prior to any ruling on the legality of the interceptions and without limiting the disclosure to relevant conversations "cannot be located within the range of permissible decisions." A writ of mandamus is therefore appropriate.

Below, we first examine whether Appellants are correct that Title III prohibits all pre-trial discovery disclosure orders in civil proceedings. Because, as we have previously ruled, Title III does not prohibit all that it does not permit, and because there is an

19

independent civil discovery right of access to such materials in the hands of a private litigant, we reject that argument.  It does not follow, however, that such materials should always be disclosed.  We find that, when addressing whether or not to order disclosure of wiretap materials in civil discovery, a district court must balance the privacy interests at stake against the right of access at issue in the case.  We conclude that, in the instant case, the district court clearly exceeded its discretion in conducting that balancing, because the privacy interests at stake in the instant case, at least at this stage of the litigation, clearly outweigh the right of access.[8]

III.  Does Title III Prohibit All Civil Pre-Trial Discovery Disclosure Orders?

Appellants primarily argue that the text of Title III, which authorizes certain methods of disclosing wiretap materials, implicitly forbids civil discovery orders requiring disclosure of wiretap materials from criminal defendants.  We disagree.

A. Textual Arguments

Largely in response to two Supreme Court decisions, one holding that a broadly written statute authorizing police to conduct wiretaps violated the Fourth Amendment, see

---

[8] As we have noted before, see City of New York, 607 F.3d at 943 n.21, the phrase "abuse of discretion," long a term of art, is somewhat unfortunate.  As noted above, the phrase has a specific legal  meaning that entirely lacks the connotation of deliberate or malignant violation often conveyed by the term "abuse" in ordinary English.  Throughout this opinion, when referring to the district court, we prefer to use the term "exceed," which in our view more accurately conveys the notion of a decision that "cannot be located within the range of permissible decisions."  Sims, 534 F.3d at 132.

Berger v. New York, 388 U.S. 41 (1967), and the other that attaching a recording device outside a telephone constitutes a search within the meaning of that Amendment, see Katz v. United States, 389 U.S. 347 (1967), "'Congress undertook to draft comprehensive legislation both authorizing the use of evidence obtained by electronic surveillance on specified conditions, and prohibiting its use otherwise.'" Bartnicki, 532 U.S. at 523, quoting Gelbard, 408 U.S. at 78 (Rehnquist, J., dissenting). The result of Congress's efforts was Title III, which established a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." Gelbard, 408 U.S. at 46.

"Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval." Id., citing 18 U.S.C. § 2516, 2518(1)-(8). All interceptions of wire and oral communications not authorized in Title III are "flatly prohibited," and Title III generally "bars the use as evidence before official bodies of the contents and fruits of illegal interceptions, and provides procedures for moving to suppress such evidence in various proceedings." Id., citing 18 U.S.C. § 2515, 2518(9)-(10).[9] However, Title III permits the use and disclosure of lawfully-obtained wiretap

---

[9] Several of our sister circuits have held that unlawful wiretap evidence may be used for impeachment. See, e.g., United States v. Baftiri, 263 F.3d 856, 856 (8th Cir. 2001); Culbertson v. Culbertson, 143 F.3d 825, 828 (4th Cir. 1998); United States v. Echavarria-Olarte, 904 F.2d 1391, 1397 (9th Cir. 1990); United States v. Vest, 813 F.2d 477, 484 (1st Cir. 1987); United States v. Caron, 474 F.2d 506, 508 (5th Cir. 1973). We need not decide here whether we agree.

materials in certain circumstances. Id.; see, e.g., 18 U.S.C. § 2517.

Appellants argue that Title III's text prohibits the disclosure at issue. However, Appellants point to no provision that prohibits the disclosure of wiretap materials to a civil enforcement agency by a civil defendant in the course of ordinary civil discovery in an enforcement proceeding, following the government's disclosure of the materials to the civil defendant in the defendant's parallel criminal proceedings. Instead, Appellants point to numerous provisions in Title III barring and permitting types of disclosures and interceptions not at issue in the instant case. Despite Appellants' arguments to the contrary, we reiterate today that Title III does not prohibit whatever disclosures of lawfully seized communications it does not expressly permit. See Newsday, 895 F.2d at 77.

Appellants first note that Title III only authorizes the government to wiretap communications when investigating certain crimes, which do not include insider trading or securities fraud. See 18 U.S.C. § 2516. However, even if wiretaps could not be authorized for the purpose of investigating these crimes, nothing in Title III bars the use of the fruits of authorized wiretaps obtained in the pursuit of investigations of suspected crimes that *are* listed in Title III in securities fraud or insider trading proceedings. Cf. 18 U.S.C. § 2517(5) (permitting disclosure and use of wiretap communications relating to

22

offenses other than those specified in the order of authorization).[10]

Next, Appellants focus on the language in 18 U.S.C. § 2518(8)(b) requiring a showing of "good cause" before wiretap applications or orders can be disclosed, and argue that the SEC is not an "aggrieved person" such that it can show the requisite "good cause." See In re New York Times Co., 577 F.3d 401, 406 (2d Cir. 2009) ("[O]ur Court concluded a quarter-century ago that 'good cause' could be found where the applicant seeking to unseal wiretap applications was an 'aggrieved person,' but not upon any lesser showing."); 18 U.S.C. § 2510(11) (defining "aggrieved person" as "a person who was a party to any intercepted . . . communication or a person against whom the interception was directed"). However, section 2518(8)(b) applies only to the disclosure of wiretap *applications* and *orders*, not to the disclosure of the contents of wiretapped communications, which is discussed briefly in a separate subsection of the same section that has no "good cause" requirement, compare 18 U.S.C. § 2518(8)(a) with 18 U.S.C. § 2518(8)(b); see also 18 U.S.C. § 2518(9), and, at length, in a separate section of Title III, see 18 U.S.C. § 2517. Since Congress has specifically laid out different requirements for the disclosure of wiretap applications and orders than for the disclosure of wiretapped communications, we decline to read the requirements for the former to apply to the

---

[10] Insofar as Appellants point out that the SEC could not employ wiretaps in carrying out its civil enforcement authority, we note only that there is no allegation that the SEC *itself* conducted wiretaps during its investigation.

latter.[11]

Appellants next argue that even if the SEC had shown "good cause" (or was not required to do so), disclosure would still be prohibited, because the disclosure of intercepted communications is only permitted (1) when the government discloses the information for certain prescribed purposes, see 18 U.S.C. § 2517(1) & (2), or (2) when "[a]ny person" discloses the contents during testimony, see 18 U.S.C. § 2517(3). Section 2517 states, in relevant part, that:

> (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
>
> (2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

---

[11] We note that how the "good cause" requirement would apply to the disclosure of applications and orders by a private litigant that has received them legitimately from the government, as opposed to by the government itself (which is the primary party against whose abuse of privacy Title III is addressed) has not been considered by our circuit in any case that has been brought to our attention. Whether the same "good cause" requirement would apply in both situations remains an open question that we do not address today.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

18 U.S.C. § 2517(1)-(3).

Appellants argue that because § 2517(1) and (2) do not permit the USAO itself to provide the wiretapped conversations to the SEC, these provisions must implicitly bar the SEC from acquiring the conversations from the Appellants. The USAO supports the first part of this proposition in an *amicus curiae* brief filed in this appeal, agreeing that it could not provide the wiretap conversations to the SEC "without any law enforcement purpose and solely to assist the SEC in a civil case."[12]

Without ruling on whether the USAO's position is correct, we conclude that even if Title III does not authorize the USAO to disclose the wiretap contents to the SEC, it would not follow that Title III prohibits the disclosure here, where the USAO has lawfully disclosed wiretapped communications to criminal defendants pursuant to § 2517(2) . That is the only disclosure that has been made by law enforcement officers in this case, and it is plainly permitted by § 2517(2). Nothing in § 2517(1) or (2) addresses

[12] In contrast, the USAO argued before the district court that it could disclose the wiretaps to the SEC pursuant to § 2517(2).

the rights or duties of criminal defendants to whom intercepted communications are lawfully disclosed to engage in further disclosures.

The purpose behind any prohibition on the USAO's sharing wiretap contents with a civil enforcement agency would appear to be to limit law enforcement uses of the materials to those prescribed in the statute. This purpose does not suggest that the SEC should not receive these materials from a civil defendant in the instant case. Such disclosure implicates completely different interests relating to the role of civil discovery in ensuring informational equality between parties. Title III's limited authorizations for law enforcement officers' disclosure of intercepted communications do not address the situation of disclosures by criminal defendants, who have been provided with wiretap fruits in criminal discovery, and who are simultaneously defendants in a civil enforcement proceeding. Giving such persons access to these wiretap communications while denying the civil enforcement agency plaintiff the ability to seek those materials in discovery would create an informational imbalance between civil litigants. Nothing in Title III addresses the rights of other parties to civil litigation to obtain wiretap materials legitimately in the possession of their adversaries through conventional civil discovery. While the USAO may not be authorized to provide these materials to the civil enforcement agency to help it investigate or prosecute a civil case, the civil discovery rules may well give the civil enforcement agency a right to these materials following their release to the defendants, to avoid an informational imbalance that would give the

26

defendants an unfair advantage in the civil proceeding.

Nor are we persuaded that 18 U.S.C. § 2517(3), which permits "[a]ny person," to disclose wiretap contents "while giving testimony" prohibits the ordered disclosure in this case. Congress's categorical authorization of testimonial disclosures is not reasonably construed as a bar to a district court's authorizing other disclosures as warranted in particular cases.[13] Indeed, a reading of the statute that confined disclosures by non-law enforcement and non-investigative personnel literally to the act of testifying, and that foreclosed disclosures necessarily adjunct to providing testimony, would cause unfortunate and certainly unintended consequences. Surely, prior to testimonial disclosure, a district court may order that wiretap materials be disclosed to the attorney who will examine or cross-examine the witness, thereby allowing counsel to prepare for trial. Indeed, Appellants do not argue that they are forbidden from sharing the wiretap materials in their possession with their criminal co-defendants, even though such a disclosure is not expressly authorized in the statute. We thus reject Appellants' invitation to construe the identification of explicitly permitted disclosures in § 2517(1), (2), and (3) as an implicit prohibition on district court disclosures in any other circumstances.

Finally, Appellants claim that Title III bars the disclosure at issue, because they

---

[13] However, unlike the disclosure ordered by the district court here, any testimonial disclosure under § 2517(3) will normally only occur *following* a court's determination of the lawfulness of the interception. See 18 U.S.C. § 2518(10); see also id. §§ 2517(5) & 2518(9).

27

could be subject to criminal sanctions for complying with the order, since they would be "intentionally disclos[ing]" the wiretapped communications while "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(c), in violation of Title III. We disagree. Criminal sanctions would not be applicable to any disclosure by Appellants pursuant to the order, because "good faith reliance on a court . . . order . . . is a complete defense against any civil or criminal action" brought under Title III. 18 U.S.C. § 2520(d)(1). Section 2511(1)(c) provides a criminal sanction for disclosures that violate the provisions of Title III, but it does little or nothing to help answer the question of whether a particular disclosure is allowed or not.

In sum, Appellants have failed to point to any provision of Title III that explicitly or implicitly prohibits the disclosure at issue.

B. Newsday

Although Appellants can point to no provision in Title III prohibiting the disclosure at issue, they argue more broadly that Title III's failure expressly to permit the disclosure at issue implicitly prohibits it. This argument is foreclosed by our decision in In re Newsday, Inc., 895 F.2d 74.[14]

---

[14] In light of this settled authority in this Circuit, Appellants' arguments relying on out-of-circuit case law and Office of Legal Counsel opinions that allegedly found that Title III prohibits what it does not permit are inapposite. See, e.g., United States v. Dorfman, 690 F.2d 1230, 1232 (7th Cir. 1982) ("Title III implies that what is not

28

In Newsday, a newspaper sought access to a search warrant application containing wiretap communications that had been sealed by the district court at the request of the government. Id. at 75. Following a guilty plea by the subject of the wiretap, the government withdrew its earlier objection to unsealing the application, and the district court released a redacted copy of the warrant materials. Id. The subject of the wiretap appealed, making essentially the same argument that Appellants make in the instant case: that Title III forbade such public disclosure of wiretap information, because the disclosure provisions of Title III are the "exclusive means by which intercepted communications may be released to the public." Id. at 77.

We held that Title III did not specifically address the issue of a right of "public access to intercepted communications when those communications become part of a public document [such as the warrant affidavit at issue] after having been used by the government in the course of its law enforcement activities." Id. at 76. Rejecting the appellant's reliance on the Seventh Circuit's decision in United States v. Dorfman, 690 F.2d 1230, 1232 (7th Cir. 1982) ("Title III implies that what is not permitted is forbidden"), we agreed that Title III "generates no right of [public] access," but found it "a non-sequitur to conclude the obverse: that Congress intended in § 2517, which relates solely to use in law-enforcement activities and judicial proceedings, to forbid public

permitted is forbidden.").

29

access by any other means on any other occasion." Newsday, 895 F.2d at 77. We noted that "nowhere does Title III state rules regarding disclosure of intercepted communications to the public incident to, or after, their use under § 2517. . . . No doubt the framers of Title III expected that the main channel of public disclosure of intercepted communications would be testimonial, but they did not so confine it." Id. at 78.

In Newsday, we ruled that there was a common law right of access to the judicial documents at issue, but that the right of access needed to be balanced against the privacy rights at issue, i.e., "the privacy rights of the person whose intimate relations may . . . be disclosed." Id. at 79. We then concluded that the district court had not abused its discretion in ordering the release of a redacted affidavit. Id. at 80; see also id. at 75 ("[W]e hold that the district court properly balanced the common law right of access to judicial records with the defendant's privacy rights, and affirm its release of a redacted copy of the warrant application.").

In short, in Newsday, we held that Title III does not prohibit all disclosures of legally intercepted wire communications that it does not expressly permit, and that in determining whether a right of access should lead to disclosure of Title III materials, the right of access should be weighed against the relevant privacy interests at stake. The district court should have applied that analysis in the instant case.

Appellants argue that Newsday is distinguishable, because it involved a disclosure

30

of wiretap materials that had already been filed as part of a "public document."[15]

Although the specific context of Newsday was the right of public access to judicial documents, the case necessarily reflects a broader principle, of which its narrow holding is simply one example. Here, just as in Newsday, the SEC's discovery request asked for disclosure of Title III materials "incident to, or after," their use under § 2517. Cf. id. at 78 ("[N]owhere does Title III state rules regarding disclosure of intercepted communications to the public *incident to, or after, their use under § 2517*." (emphasis added)). In Newsday, the government had already properly disclosed the material pursuant to § 2517(2) in seeking a search warrant; here, the USAO disclosed the wiretap materials as part of the criminal discovery process, also pursuant to the "proper performance of [its] official duties" under 18 U.S.C. § 2517(2).[16] *Newsday* sought wiretap materials that had already been disclosed pursuant to § 2517 by invoking its independent right of access to judicial documents; the SEC here similarly seeks such

---

[15] In fact, while the search warrants and affidavits at issue in Newsday were public documents "required by Rule 41 of the Federal Rules of Criminal Procedure to be filed with the clerk of the issuing court," Newsday, 895 F.2d at 77, they had been sealed prior to the court order that was appealed and were therefore not yet public. When they could properly be disclosed, if at all, was still at issue in the case.

[16] Appellants' argument that the issue here is whether "a civil litigant can obtain wholesale access to thousands upon thousands of wiretap intercepts completely *outside* of section 2517 and *prior to* (not 'incident to, or after,') any authorized disclosure under section 2517," is therefore incorrect. Indeed, Appellants concede that disclosure to *them* was proper, noting that "Title III permitted the U.S. to provide the wiretap recordings to [Appellants] solely for their use in defending against the criminal case. 18 U.S.C. § 2517(2)."

31

material, also already legitimately disclosed to Appellants pursuant to § 2517, by invoking its independent right to discovery in civil litigation. Just as in Newsday, Title III does not expressly address the right claimed here. The issue, therefore, is whether there is an independent right of access to the materials that might permit further disclosure, and, if so, whether the district court properly balanced any such right against the privacy interests at stake.[17]

We have repeatedly employed such balancing when dealing with Title III issues.[18]

---

[17] Newsday is, of course, distinguishable in various ways. The disclosure at issue in Newsday was a disclosure in a newspaper to the full public, while the disclosure at issue in the instant case only involves disclosing the contents to SEC attorneys as well as any other parties. Therefore, in this regard, the intrusion on privacy interests contemplated here is less dramatic than the one at issue in Newsday. On the other hand, unlike the instant case, which involves the privacy interests of hundreds of individuals, the disclosure at issue in Newsday only involved the privacy interest of one party and, in fact, the court redacted any disclosure of third-party information. The privacy interests at stake in Newsday were thus both greater and lesser in various ways than the clashing interests here. These distinctions, however, affect the balancing of interests that the court must perform, not the analytic framework that requires such balancing.

[18] See, e.g., Gerena, 869 F.2d at 85 ("Our recognition of a qualified First Amendment right of access does not mean that Title III materials used by the government in connection with a criminal proceeding must automatically be disclosed. The district court must balance the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties."); Matter of New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987) ("Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted."); Matter of New York Times Co., 834 F.2d 1152, 1154 (2d Cir. 1987) ("Redaction is permissible . . . if the district judge finds that important Title III privacy interests cannot otherwise be protected and such privacy interests outweigh the public's interest in access."); see also id. ("Title III incorporates a very important right of privacy and . . . in applying the balancing

32

We have similarly employed a balancing in other relevant discovery contexts.[19]  We are therefore confident that district courts can engage in such balancing in the present context without undue difficulty.

C.  NBC and New York Times

Appellants argue that other circuit precedent counsels against such an analysis. First, Appellants cite our decision in National Broadcasting Co. v. U.S. Department of Justice, 735 F.2d 51 (2d Cir. 1984) ("NBC") – our only precedent that deals directly with a civil discovery dispute, as opposed to a common-law or First Amendment right of access, involving wiretap materials.  In NBC, we noted that "Congress did not utilize a provision in the Organized Crime Control Act [amending § 2517] to make the fruits of wiretapping broadly available to all civil litigants who show a need for them."  Id. at 54. While that statement is clearly correct so far as it goes, NBC does not stand for the

test . . . the right of privacy incorporated in Title III 'should weigh heavily in a court's balancing equation.'" (citation omitted)).

[19] See, e.g., City of New York, 607 F.3d at 948 (in determining whether law enforcement privilege should foreclose disclosure the "public interest in nondisclosure [must be balanced] against the need of a particular litigant for access to the privileged information" (internal quotation marks omitted)); SEC v. TheStreet.com, 273 F.3d 222, 231-32 (2d Cir. 2001) (discussing requirement that district courts weigh public right of access for "judicial documents" in civil cases against danger of impairing law enforcement or judicial efficiency and privacy interests of those resisting disclosure); United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) ("[T]he district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity.").

proposition that the disclosure of Title III materials in civil discovery is necessarily foreclosed.

NBC involved a libel suit brought by Wayne Newton, the entertainer, against NBC, the broadcasting corporation, based on broadcasts concerning organized crime investigations involving Newton. Id. at 51-52. The government had conducted wiretaps in an investigation of organized crime members' attempts to extort money from Newton and others. Id. at 52. To defend against the libel action, NBC sought discovery from the government of the wiretap applications, orders, and recordings. Id. The government opposed disclosure of these documents. Id. The district court found that, while the interceptions were legal, "it lacked the power to order the government to disclose the[] contents [of the wiretaps] in a civil proceeding to which the government was not a party." Id. at 53.[20]

We affirmed the district court, noting that, while § 2517(3) had been amended in 1970 to permit disclosure of materials in civil as well as criminal proceedings, "turning Title III into a general civil discovery mechanism would simply ignore the privacy rights of those whose conversations are overheard." Id. at 54. We emphasized that the suit at issue, between NBC and Newton, was not a civil enforcement proceeding, which Congress had in mind in passing the amendment, and found that Congress surely had not

[20] It also denied NBC's request for access to applications and orders because NBC had not shown "good cause." NBC, 735 F.2d at 53.

intended the amendment to Title III "to make the fruits of wiretapping broadly available to all civil litigants who show a need for them." Id.[21]

While NBC stands for the proposition that a civil litigant cannot force the government to disclose Title III materials in an ordinary civil case for the simple expedient of aiding its defense, it does not govern the instant case. NBC is distinguishable in two fundamental ways. First, it dealt with whether a court could order *the government* to disclose previously undisclosed wiretap recordings against its wishes in a civil proceeding unrelated to the government's criminal case. In the instant case, on the other hand, the government has disclosed these materials to a party pursuant to § 2517(2), and the question is whether or not the court can order *that party* to disclose the materials in the interest of the civil discovery principle of equal knowledge. Second, there was no relevant informational imbalance in NBC, as Newton did not have access to these materials either. Here, in contrast, Appellants have free access to the materials to prepare their defense in the SEC action.[22]

_____

[21] Regarding the district court's denial of access to the applications and orders, we found that NBC was not an "aggrieved person" and thus could not show "good cause" for their release, and, in any event, that NBC failed to show why it needed these sealed materials for its case, when it should have sufficient evidence simply from the sources it used for its broadcast. NBC, 735 F.2d at 55.

[22] Insofar as Appellants have disclaimed any present intention to introduce any of these materials into evidence, they give no indication that this is anything but a tactical decision. It is difficult to believe that Appellants would decline to introduce at trial, or could be prevented from so utilizing, any evidence provided to them by the government that clearly exonerated them from the charges brought by the SEC.

35

Therefore, while NBC establishes that Title III is not meant to make wiretap materials a repository of information available from the government by subpoena to civil litigants for use in private disputes, it does not address the legitimacy of ordering the discovery from a private litigant of Title III materials that have already been disclosed to that litigant by the government, in order to create a level playing field between a civil enforcement agency and that litigant.

Finally, while NBC makes clear that Title III does not make wiretap materials in the government's possession freely available to civil litigants, it does not support the proposition that discovery of such materials from anyone, made under any circumstances, is forbidden. Indeed, the result in NBC is entirely compatible with the balancing approach set forth in Newsday. Under the circumstances present in NBC, the interests weighing against disclosure were overpowering. In addition to the privacy interests of those who had been overheard, the government's strong interest in the confidentiality of a criminal investigation strongly counseled against disclosure. See NBC, 735 F.2d at 52 (noting that the government opposed disclosure, in part, because "the wiretap applications contained descriptive data regarding confidential informants"). Moreover, absent any new criminal prosecution, there was no reason to believe that the wiretap materials that had not been disclosed at the related criminal trial would ever be disclosed to anyone outside the government. On the other side of the balance, NBC sought materials that might or might not ultimately be relevant or admissible at trial, and that no other party to

36

the civil litigation possessed. Under such circumstances, disclosure of the wiretap materials was clearly unwarranted. It does not follow that the balance will come out the same way in all other cases.

Appellants' reliance on New York Times, 577 F.3d at 406, for the proposition that there is a "strong presumption against disclosure of the fruits of wiretap applications," is also misplaced. Id. (emphasis omitted). In New York Times, we concluded that because *The New York Times* was not an "aggrieved person" it could not show the requisite "good cause" to release applications under Title III regarding wiretaps of the prostitution ring once patronized by former Governor Eliot Spitzer. Id. at 408. New York Times, however, dealt with the disclosure of wiretap *applications*, not contents.[23] In fact, in New York Times, we expressly distinguished Newsday by noting (among other reasons) that at issue in Newsday were the fruits of the wiretaps, which are governed by 18 U.S.C. § 2517, not the wiretap applications, which are governed by § 2518(8)(b). Id. at 407 n.3; see also id. at 408. In any event, even if there is a presumption against disclosure of wiretap contents that would be relevant to this case, an issue we need not decide, the analysis set forth above is still appropriate, as that presumption could be overcome with a sufficient showing of need based on a Newsday-type balancing.

---

[23] While the opinion in New York Times did refer to the "fruits" of wiretap applications, the actual issue in the case was whether the applications themselves should be disclosed.

In short, Appellants have failed to point us to any case law establishing that Title III prohibits the disclosure of wiretap materials in a situation such as this one: where the government has previously disclosed the contents of wiretaps to a party, and a civil enforcement agency seeks access to those contents from *that party*, not from the government.

IV.  Did the District Court Exceed its Discretion in Entering the Instant Order?

"We review discovery rulings for abuse of discretion."  In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 102 (2d Cir. 2008).  Pursuant to Newsday, the district court was required to determine whether or not the SEC had a right of access to the materials, and, if so, whether any such right outweighed the privacy interests at stake.  We conclude that the district court correctly found that the SEC had a legitimate right of access to the materials, but that it clearly exceeded its discretion in finding – on the record before it – that this right of access outweighed the privacy interests implicated by the order.  Further inquiry was necessary, specifically, into the legality of the wiretaps and the relevancy of the recordings to be disclosed, before any such conclusion could be reached.

A.  The SEC's Right of Access

Under the circumstances of this case, where the civil defendant has properly received the Title III materials at issue from the government, the SEC has a presumptive

38

right to discovery of these materials from its adversary based on the civil discovery principle of equal information.

The Supreme Court has acknowledged the "fundamental maxim of discovery that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 540 n.25 (1987), quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947) (alteration in original); see also Weiss v. Chrysler Motors Corp., 515 F.2d 449, 457 (2d Cir. 1976). "To that end, either party may compel the other to disgorge whatever facts he [or she] has in his [or her] possession." Hickman, 329 U.S. at 507; see also Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 170 (2d Cir. 2003) ("'[C]ivil trials in the federal courts no longer need be carried on in the dark.'" (quoting Schlagenhauf v. Holder, 379 U.S. 104, 115 (1964))).

Federal Rule of Civil Procedure 26(b)(1) embodies this principle by permitting parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); see also id. ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). However, while the SEC has a right of access to the materials possessed by Appellants, that right of access does not outweigh any and all privacy interests at issue. A balancing is required for a district court reasonably to exercise its discretion.

39

The right of access to discovery materials is frequently qualified in the interest of protecting legitimate interests. See, e.g., In re Agent Orange, 517 F.3d at 103 ("A district court has wide latitude to determine the scope of discovery . . . [and] abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." (internal quotation marks and citations omitted)); see generally In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003) ("[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds."). For example, a district court may permit the withholding of otherwise discoverable evidence to avoid disclosing privileged information, Fed. R. Civ. P. 26(b)(5)(A) (accounting for a party "withhold[ing] information otherwise discoverable by claiming that the information is privileged"); see, e.g., City of New York, 607 F.3d at 948 ("Once the party asserting the privilege successfully shows that the privilege applies, the district court must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." (internal quotation marks omitted)), or trial preparation materials, Fed. R. Civ. P. 26(b)(3) (setting limitations on when and what kind of attorney work-product "documents and tangible things" may be disclosed, but noting that court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"); see, e.g., In re Grand Jury Subpoenas Dated Mar. and Aug. 2002, 318 F.3d 379, 383-84 (2d Cir. 2003). A district court must also limit "the frequency or extent of discovery" if it determines that it is "unreasonably cumulative or duplicative, or can be obtained from

some other source that is more convenient, less burdensome, or less expensive . . . [or where] the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); see, e.g., In re Subpoena Issued to Dennis Friedman, 350 F.3d at 69. And a district court may issue protective orders "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see, e.g., City of New York, 607 F.3d at 949; In re Subpoena Issued to Dennis Friedman, 350 F.3d at 69. In short, as is true generally in the discovery context, the SEC has a discovery right to the information in question, but that right is not absolute.

We first examine the weight of the SEC's interest. Appellants' unilateral access to this information in preparing for trial would surely be prejudicial to the SEC, because, even if Appellants do not use any of the recordings at the civil trial, they could still use the materials in preparation for trial – for example, by preparing to cross-examine witnesses at deposition or at trial, by attacking the credibility of witnesses, or by deciding how to structure their defense. Placing the parties on a level playing field with respect to such functions is the very purpose for which civil discovery exists. For this reason, we find that the SEC's right of access is significant.

Appellants make several arguments that there is no relevant informational imbalance. They argue that Congress intentionally created any imbalance that might exist when it withheld wiretap authority from the SEC, and that the SEC could simply depose Appellants if it wished to learn about their telephone conversations. Moreover, they

41

argue that they do not intend to use these materials in their civil defense. Appellants also argue that informational equality is not always guaranteed, pointing to differential rules of access for civil and criminal litigants with regards to sensitive information involved in grand jury proceedings and materials protected by executive privilege. Finally, Appellants argue that there is no informational harm because the wiretapped conversations at issue here are not relevant. While these arguments demonstrate that the SEC's rights to discovery cannot be absolute, and some of them bear on the balance to be struck, they do not convince us that the SEC does not have a significant interest in access to these materials that, if it outweighs the privacy interests at stake, could permit a district court to order disclosure.

First, for reasons already discussed, we are not persuaded that Congress has acted to deny the materials at issue to the SEC. The fact that Title III does not permit the SEC to engage in wiretapping does not mean that it forbids the SEC from possessing the fruits of wiretaps legitimately intercepted during a criminal investigation and disclosed to parties against whom the SEC is litigating. The issue is not whether the SEC has a right to obtain verbatim accounts of its adversaries' conversations by wiretapping – the power that Congress denied to the SEC. Rather the question is whether Appellants are entitled to withhold such verbatim accounts of their conversations, which are in their possession, from their adversary in litigation.

Second, as Appellants admit, any depositions of Appellants would be unlikely to be fruitful given the likelihood that Appellants would invoke their Fifth Amendment

42

rights due to the pending criminal proceeding. Appellants submit that this concern would be mitigated if the SEC had waited to file its case until after the criminal proceeding concluded; or, for that matter, if the district court had agreed to adjourn the enforcement proceeding until after the criminal proceeding. Even if we were to agree, such mitigation would not resolve this appeal. Appellants's deposition is not a perfect substitute for access to the wiretapped conversations even apart from any invocation of Fifth Amendment rights, given the likelihood that Appellants would not remember the contents of many potentially relevant conversations to which their attorneys, in possession of recordings of those conversations, would still have access. In any event, parties to litigation are not limited in discovery to their adversaries' recollection as to matters reduced to writing, recorded, or otherwise memorialized. The point is clear if we imagine that Appellants themselves, rather than the government, had taped their own conversations: the argument that the SEC (or any other litigation adversary) had no interest in discovering such recordings because its lawyers could simply depose Appellants and get their recollections of the conversations would be rejected out of hand.

Third, while Appellants state that they do not intend to use the materials in preparation for their civil trial, that intention does not eliminate the unfair advantage they might have against the SEC, given that the team of lawyers defending the criminal case substantially overlaps with that defending the civil case. It would be nearly impossible to stop the attorneys from, at the very least subconsciously, using information from these

43

materials in preparation for the civil trial.[24] At any rate, Appellants do not maintain that they are legally precluded from using the wiretap materials at their civil trial should it become tactically advisable to do so. It therefore cannot be said that this imbalance would be insignificant.

Fourth, while Appellants may be correct that civil and criminal litigants may have different discovery rights regarding grand jury proceedings and claims of executive privilege, the cases cited by Appellants do not bear on the instant case. While it is true that government civil attorneys may only receive grand jury materials from prosecutors for the purposes of pursuing a civil suit upon making a showing of "particularized need," United States v. Sells Eng'g, Inc., 463 U.S. 418, 420 (1983); see also Illinois v. Abbott & Assocs., 460 U.S. 557, 566-67 (1983); Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222-24 (1979), this does not affect the analysis of when a civil enforcement agency can receive wiretap materials *from a civil litigant* who has lawfully received the materials from the government. The cases cited by Appellants do not appear to have

---

[24] This inevitable "tainting" of the team of attorneys is the reason that so-called "ethical walls" are erected to insulate attorneys from conflicts of interest, immunized testimony, or materials that may have been illegally obtained. See, e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 138 (2d Cir. 2005); United States v. Schwimmer, 882 F.2d 22, 26 (2d Cir. 1989); cf. Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 254 (2d Cir. 1985); United States v. Sapere, 531 F.2d 63, 66 (2d Cir. 1976). Indeed, the SEC has offered to establish a "taint" team of attorneys that would review the wiretap materials until the suppression motion had been decided. See, e.g., United States v. Lentz, 524 F.3d 501, 516 n.3 (4th Cir. 2008). Appellants, on the other hand, have not suggested they would establish such a "taint" team, which is quite understandable given the necessary expense that would be involved.

44

involved disclosure requests directed to *private parties* who have previously received the requested materials legitimately from the government.[25] In any event, these cases do not establish that disclosure of even the presumptively secret grand jury materials there at issue is flatly prohibited; they establish instead that disclosure is warranted only when on balance "the need for [disclosure] outweighs the public interest in secrecy . . . . In sum, [] the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court." Sells, 463 U.S. at 443, quoting Douglas Oil, 441 U.S. at 223. While the interests may be different in the instant case, this type of balancing is precisely what we call for today.

Similarly, Appellants are correct that civil discovery interests may be less weighty than criminal discovery interests in dealing with executive privilege. See Cheney, 542 U.S. at 384 ("The need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in [United States v. Nixon, 418 U.S. 683 (1974)]."). But that argument simply goes to the balance that must be undertaken and does not undermine the SEC's presumptive right to discovery. Indeed, not even executive privilege is absolute, see Nixon, 418 U.S. at 707, and, just as in this case, interests must be weighed in deciding whether information subject to the privilege should be disclosed. In short, while a civil discovery interest in

---

[25] Indeed, in Douglas Oil, the parties seeking the grand jury materials chose not to seek it from their adversary pursuant to typical discovery, but sought it from the district court as "guardian of the grand jury transcripts." Douglas Oil, 441 U.S. at 216.

material may weigh less heavily than a criminal discovery interest, it does not follow that the SEC's right to informational equality is outweighed by Appellants' privacy interests in the instant case.

Finally, since the district court did not evaluate the materials to determine their relevance, we are not in a position to evaluate Appellants' claim that the wiretap conversations are not relevant. *If* they are relevant, see Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."), then Appellants' possession of the conversations would put the SEC at a disadvantage, and the SEC has a presumptive right to discover them. And, as we conclude below, any disclosure of wiretap conversations should be limited to relevant conversations in any event.

In sum, despite Appellants' arguments to the contrary, the SEC clearly has an interest in access to these wiretap conversations insofar as they create an informational imbalance prejudicing its preparation for the civil trial.

B. The Privacy Interests at Stake

While the SEC has a right of access to the wiretap materials, that right must be balanced against the strong privacy interests at stake in connection with the fruits of electronic surveillance. The privacy interests in the instant case merit particular attention given that the disclosure order implicated thousands of conversations of hundreds of

46

innocent parties, and that the district court ordered disclosure prior to any ruling on the legality of the interceptions and without limiting the disclosure to relevant conversations.

The Supreme Court has made clear that "although Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern." Gelbard, 408 U.S. at 48; see also Bartnicki, 532 U.S. at 523 ("One of the stated purposes of [Title III] was 'to protect effectively the privacy of wire and oral communications.'"); id. at 532 ("Privacy of communication is an important interest, and Title III's restrictions are intended to protect that interest . . . ." (citation and footnote omitted)). Indeed, we have reiterated the importance of the privacy interests embodied in Title III time and again.[26] The fact that Title III does not impose an *absolute* ban on civil discovery orders of the kind at issue here does not mean that the concerns for privacy that underlie Title III are irrelevant or can be disregarded. To the contrary, we

---

[26] See Gerena, 869 F.2d at 86 ("[W]e do not want to understate the significant privacy interests of those who have been targeted for surveillance. The protection of privacy was a very important congressional concern in the passage of Title III. 'Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted.'" (quoting New York Times Co., 828 F.2d at 116) (citations omitted)); New York Times Co., 828 F.2d at 115 ("It is obvious that although Title III authorizes invasions of individual privacy upon compliance with certain stringent conditions, the protection of privacy was an overriding congressional concern. . . . We thus agree . . . that the right of privacy protected by Title III is extremely important."); New York Times Co., 834 F.2d at 1154 ("Title III incorporates a very important right of privacy and . . . in applying the balancing test . . . the right of privacy incorporated in Title III should weigh heavily in a court's balancing equation." (internal quotation marks omitted)).

47

conclude that those concerns, and the evident desire of Congress to limit disclosures of the fruits even of lawful wiretapping, must be carefully weighed before discovery is ordered.

C. The District Court Could Not Properly Balance the Interests at Stake on the Record Before It

At the present stage of this litigation, a definitive balancing of the interests at stake in this case is impossible, because the record is not adequately developed to support the broad order appealed from. Nevertheless, it is clear that the order appealed from, for those very reasons, cannot be sustained. The district court exceeded its discretion in failing to balance properly the relevant privacy interests against the SEC's right of access in two major ways: (1) by ordering the disclosure of the conversations prior to a ruling on the legality of the interceptions, and (2) by failing to limit the disclosure order to relevant conversations.

1. The Suppression Motions Have Not Been Decided

The sheer number of conversations and parties at interest in this case evince a strong privacy interest that would require an equally strong right of access to support disclosure. Even absent such numbers, a district court could not effectively balance these competing interests while the legality of the wiretaps is at issue. If the legality of the wiretaps is upheld, any privacy rights against interception would have been infringed lawfully and with good purpose. On the other hand, if the wiretaps are found to have been unlawful, the privacy rights at issue would already have been grievously infringed,

48

and further dissemination of conversations that had been illegally intercepted would only compound the injury. Title III limits the proper dissemination and use of lawfully-authorized electronic surveillance. It absolutely prohibits, however, the intentional disclosure of the fruits of *unlawful* wiretapping. See 18 U.S.C. §§ 2518(10)(a) & 2511(1)(c); see also id. § 2515; Gelbard, 408 U.S. at 46 ("Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, and the victim of such interception, disclosure, or use is entitled to recover civil damages." (citation omitted)).

A determination suppressing the fruits of the surveillance here at issue would drastically alter the balance of interests in the civil case. Moreover, while there would still be some asymmetry in the fact that Appellants' attorneys would have had access to the materials while preparing their defense, a suppression order would at least prevent their use in evidence.[27] It is for these reasons that a defendant subject to a wiretap is given the opportunity to have a judge determine the legality of wiretaps *before* their testimonial disclosure at a criminal trial. See 18 U.S.C. § 2518(10). Conversely, a determination that the wiretaps were legal would reduce the privacy concerns, and would

---

[27] In addition, as Appellants point out, if the wiretaps are found to have been illegal, ascertaining the effect of the wiretaps on witnesses and attorneys who might have been "tainted" by any unlawfully intercepted Title III materials would be extremely difficult. For this reason, and because it would not stop the initial disclosure to the SEC and other parties, the district court's protective order limiting disclosure to the SEC and other parties to the litigation was not sufficient to protect the privacy interests at stake.

49

make it all but inevitable that some or all of the most relevant conversations would be publicly played at the criminal trial.

The additional violations of rights that would result if the disclosed conversations were found to be illegally intercepted could easily be avoided by requiring that the disclosure order await a ruling on the legality of the intercepts. In contrast, there appears to have been no significant benefit to either party in ordering the disclosure prior to the adjudication of the pending suppression motions in the criminal case. No emergency compelled the court to order all discovery completed prior to any decision on the legality of the electronic surveillance. Indeed, awaiting a ruling on the legality of the interceptions would advance all the interests at stake, because if the wiretaps were found to be legal, the privacy interests would be less weighty, and if the wiretaps were found to be illegal, the privacy interests would be protected because disclosure would not be permitted, thereby limiting both any "taint" on relevant actors and any further infringement on the right against disclosure.

The more prudent course in the instant case may have been to adjourn the civil trial until after the criminal trial. Apparently, all the parties agreed to such a request, yet the district court declined to grant it. Were the civil trial adjourned, the most relevant wiretapped conversations, assuming they were found to be legally intercepted, might well be publicly disclosed at the criminal trial, and the SEC would then be able to use these materials in a civil proceeding without implicating any weighty privacy rights. Such an adjournment would have the added benefit of making the district court's job of balancing

any relevant interests significantly easier.

At a minimum, however, ordering discovery of the wiretap materials before any determination of the legality of the surveillance involved exceeded the district court's discretion. A primary reason for the pretrial disclosure of the material to Appellants in the criminal case in the first place was to enable them to make motions addressing their legality before the judges presiding over the related criminal cases. Appellants and the defendants in the related cases have indeed made, or indicated they will make, such motions before Judges Holwell and Sullivan, and proceedings to resolve them are under way. See United States v. Rajaratnam, No. 09 Cr. 1184 (RJH) (S.D.N.Y. Aug. 12, 2010) (Doc. No. 130) (ordering evidentiary hearing with respect to motion to suppress); United States v. Goffer, No. 10 Cr. 56 (RJS) (S.D.N.Y. Sep. 10, 2010) (Doc. No. 98) (setting briefing schedule on motions). A district court has a legitimate interest in maintaining control over its docket and enjoys considerable discretion in setting schedules for discovery, motions, and trial, but that interest is insufficient to support an order directing the further dissemination of wiretap materials pending a decision on the legality of their acquisition.[28]

---

[28] Of course, we express no opinion as to the merits of the pending motions; we merely note that, pending adjudication of the motions, the possibility that they will be granted cannot be ruled out. Similarly, we express no view as to whether there may be circumstances in which a judge in a civil case may himself appropriately address the legality of electronic surveillance in connection with discovery litigation. We note only that in this case, with such motions already pending in the criminal cases, there is no need or warrant for such proceedings in the civil case.

51

Given that there were so many reasons to wait until a court had ruled on the legality of the interceptions, and no persuasive reasons to proceed without waiting, the district court's decision to order disclosure of the wiretap communications prior to any ruling on their legality clearly "cannot be located within the range of permissible decisions." Sims, 534 F.3d at 132 (citation and internal quotation marks omitted). The privacy interests at stake prior to a ruling on the legality of interceptions clearly outweigh the SEC's interest in discovery.

2. The Court's Failure to Limit the Disclosure to Relevant Conversations

The district court also clearly exceeded its discretion by failing to limit the disclosure of the wiretapped conversations to relevant conversations. The SEC does not have a right of access to irrelevant conversations, even if lawfully intercepted, because Appellants' possession of these conversations would not benefit them in preparing for the civil trial. Indeed, both the SEC and USAO agree that the order should be limited to relevant disclosures. See, e.g., SEC Br. 8 ("Although not emphasized in the district court, the Commission has no objection to either this Court or the district court making it explicit that only relevant materials need be produced. This would exclude all-nonrelevant communications, including obviously all communications with third parties involving matters unrelated to the charged civil and criminal conduct."); see also id. at 55 ("The Commission does not seek materials that are not relevant to its claims, and if necessary the district court's order can be modified to make this point explicitly."). The point assumes particular significance here where ordering the disclosure of *all* the

52

conversations without limiting discovery to relevant material could infringe the privacy rights of hundreds of individuals, whose irrelevant, and potentially highly personal, conversations with the Appellants would needlessly be disclosed to the SEC and other parties, without furthering any legitimate countervailing interest. The district court clearly exceeded its discretion by this failure to limit the disclosure.

While the district court was correct that the SEC had a legitimate right of access to the wiretap materials, it could not properly balance that interest against the privacy interests at stake while the legality of the wiretaps was still unresolved. In any event, the district court exceeded its discretion in ordering disclosure of wiretap materials without regard to relevancy, particularly in a case involving a large number of recordings intercepting conversations of innocent parties. In sum, because the challenged order was thus "clearly outside the range of permissible decisions," we conclude that Appellants have shown a "clear and indisputable right" to the writ of mandamus to vacate that order.[29]

**CONCLUSION**

---

[29] We express no view as to the ultimate propriety of a more limited discovery order, entered after further developments in the criminal case and after a more careful balancing of the interests at stake upon a fuller record, including an analysis of the degree of relevance of the conversations at issue. Nor do we express any view on whether immediate review of such an order, by mandamus or otherwise, would be available. Such questions may be addressed if and when they ever arise.

53

For the foregoing reasons, we GRANT the writ of mandamus, VACATE the

district court's discovery order, and REMAND the cause to the district court for further

proceedings not inconsistent with this opinion.